# Illinois Official Reports

## Supreme Court

---

### *People v. Kuehner*, 2015 IL 117695

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DANNY KUEHNER, Appellant. |
| Docket No. | 117695 |
| Filed | May 21, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Sangamon County, the Hon. Patrick W. Kelley, Judge, presiding. |
| Judgment | Judgments reversed.<br>Cause remanded. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Kieran M. Wiberg, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and Sameena Mohammed, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices          JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    The issue is whether the circuit court of Sangamon County erred in granting appointed postconviction counsel's motion to withdraw and dismissing defendant's postconviction petition. We hold that it did.

¶ 2                                BACKGROUND

¶ 3    The appellate court's opinion below sets forth a thorough and comprehensive account of the factual history of this case, and we need not repeat the entirety of that account here. 2014 IL App (4th) 120901. Instead, we set forth only a brief summary of the relevant facts and only as necessary to frame the specific issue presented in this appeal.

¶ 4    In October 2005, the 17-year-old defendant, Danny Kuehner, entered an open guilty plea to attempted first degree murder (720 ILCS 5/8-4, 9-1(a)(1) (West 2004)) and home invasion (720 ILCS 5/12-11(a)(2) (West 2004)). In February 2007, defendant filed a motion to withdraw that plea, alleging that it was not knowing and voluntary because of his attorney's deficient advice and representation. The trial court denied the motion and sentenced defendant to two consecutive terms of 17½ years in prison.

¶ 5    In May 2009, defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)). In the petition, defendant alleged that he was denied his right to the effective assistance of both trial and appellate counsel. More specifically, defendant's petition alleged that his trial counsel was ineffective for (1) failing to investigate defendant's history of mental illness; and (2) telling defendant, defendant's mother, and defendant's aunt "lies" in order to "force" defendant into a guilty plea. According to the petition, the alleged lies included telling defendant that he would receive a sentence of between 12 and 20 years if he pleaded guilty. In addition, defendant's petition specifically alleged that trial counsel informed defendant's family that they had not paid counsel enough money to take the case to trial and that, because of this, trial counsel not only manipulated defendant's aunt and mother into believing they had to convince defendant to plead guilty, but also hid from defendant and his family exculpatory police and medical reports that undermined the State's charge of attempted murder. As for the claims against appellate counsel, defendant's petition simply alleged that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness as an issue on direct appeal.

¶ 6    Defendant attached two affidavits to his *pro se* petition, one from his mother and one from his aunt. In her affidavit, defendant's mother states that trial counsel told her that "there was evidence that would get Danny put in prison for life" and that "if [she] did not 'convince' Danny he had to plead guilty Danny would be in prison for the rest of his life." The affidavit goes on to state that defendant's mother "found out later that more evidence existed and [trial

counsel] told me lies but at that time I was scared for my son's life so I thought I had to get him to plead guilty." Trial counsel also told defendant's mother that "he was not paid enough money to take Danny's case to trial and so [defendant's aunt and mother] would have to find a way to 'convince' Danny to plead guilty." According to defendant's mother, "[m]y son Danny did not plead guilty because he is guilty, he plead [*sic*] guilty because his lawyer told me to give him information that I later found out was false."

¶ 7    The affidavit from defendant's aunt states that, although trial counsel initially informed her that "the evidence showed that this was not Attempted First Degree Murder," he "shortly thereafter said he had told Danny to plead guilty to Attempted First Degree Murder and Home Invasion because the State had offered a plea bargain." According to the affidavit, trial counsel told defendant's aunt and mother "about some evidence they had against Danny, including Danny's t-shirt with blood on it, saying it was probably the victim's." As it turns out, although "[i]t ended up being someone else's blood and had nothing to do with the case," defendant and his family "were told only bits and pieces of Danny's discovery." According to defendant's aunt, "[w]e felt we had no other choice" and "basically just helped scare Danny into signing the deal along with [trial counsel] threatening to pass the deal onto his co-defendant if Danny did not sign it immediately." Following the entry of defendant's guilty plea, defendant's aunt sought new counsel "to try and take back the plea." According to the affidavit, defendant's new counsel showed defendant's family "medical reports and police reports we never knew existed" and that indicated that "the victim was in 'stable condition' and had no 'life threatening injuries.' "

¶ 8    After conducting its first-stage review of defendant's *pro se* petition, the trial court entered an order specifically finding that the petition "is not frivolous or patently without merit." The trial court therefore docketed the petition for second-stage proceedings and appointed counsel to represent defendant. In addition, the trial court ordered the State to file a responsive pleading within 30 days, which the State did in the form of a motion to dismiss.

¶ 9    Almost three years later, in July 2012, appointed counsel filed both a motion to withdraw as postconviction counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and a brief in support of that motion. According to the motion, "after a careful review of the entire record, the controlling law at the time of the conviction and sentence, as well as the immediately-preceding controlling law, and after conducting a thorough reviews of the issues raised by [defendant], court-appointed counsel herein has concluded that the issues raised by [defendant] are without merit and unsupportable as a matter of law." In the supporting brief, under the caption "Reason for Granting Motion to Withdraw," appointed counsel explained in detail her reasons for concluding that defendant's claim relating to trial counsel's alleged failure to investigate defendant's history of mental illness was without merit. In addition, appointed counsel explained why defendant's concerns over the disparity between his sentence and that of his codefendant were baseless. At no point, however, in either her motion to withdraw or the supporting brief, did appointed counsel ever address, analyze, or even mention any of the claims or allegations relating to trial counsel's alleged lies. Indeed, these pleadings nowhere reference the alleged lies relating to defendant's potential sentence, and they nowhere reference the alleged lies relating to the manipulation of defendant and his family so as to "force" defendant into pleading guilty. Instead, counsel merely asserted, with neither explanation nor support, that "the issues raised by [defendant] are without merit and unsupportable as a matter of law" and that "no errors committed by any of [defendant's]

counsel *** rose to the level of ineffectiveness." Following a hearing in September 2012, the trial court granted both appointed counsel's motion to withdraw and the State's motion to dismiss.

¶ 10    Defendant appealed, and the appellate court affirmed. 2014 IL App (4th) 120901. On appeal, defendant initially argued that the trial court erred in granting appointed counsel's motion to withdraw because, contrary to this court's decision in *People v. Greer*, 212 Ill. 2d 192 (2004), that motion did not explain why each of the issues raised in defendant's *pro se* petition was frivolous or patently without merit. In addition, defendant argued that the record in this case fails to show either that appointed counsel fulfilled her obligations under Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. Apr. 26, 2012)) or that all of the claims raised in defendant's *pro se* petition are *in fact* frivolous or patently without merit. Accordingly, defendant asked the appellate court to reverse the trial court's judgment and remand the cause for further second-stage proceedings.

¶ 11    In rejecting defendant's arguments, the appellate court initially held that, under this court's decision in *Greer*, the dispositive question in cases such as this is not whether appointed counsel's motion to withdraw addresses all of the claims raised in the *pro se* petition. Rather, the dispositive questions are whether counsel *in fact* complied with Rule 651(c) and whether the claims raised in the *pro se* petition are *in fact* frivolous or patently without merit. 2014 IL App (4th) 120901, ¶¶ 66, 71. And if the answer to both of those questions is "yes," a reviewing court may affirm the trial court's decision allowing counsel's motion to withdraw, irrespective of any substantive shortcomings in the motion itself. See *id.* ¶ 67. From there, the appellate court went on to address the two questions identified above, namely, whether appointed counsel in fact complied with Rule 651(c) and whether the claims raised in defendant's *pro se* petition were in fact frivolous or patently without merit. As to appointed counsel's compliance with 651(c), the appellate court acknowledged that counsel neglected to file a Rule 651(c) certificate of compliance. Nevertheless, the appellate court concluded that Rule 651(c) compliance can be discerned in this case through a combined reading of appointed counsel's motion to withdraw, defendant's motion to strike that motion, and the time sheets that appointed counsel attached to her petition for payment of fees. *Id.* ¶ 77. As for the merits of defendant's *pro se* claims, the appellate court examined each of the claims that defendant was defending on appeal and concluded either that the claim was not adequately presented in the *pro se* petition or that the claim was refuted on its face by the record. *Id.* ¶¶ 80-93. Accordingly, the appellate court affirmed the trial court's judgment granting both appointed counsel's motion to withdraw and the State's motion to dismiss. *Id.* ¶ 93.

¶ 12    Defendant appealed to this court, and we granted his petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. July 1, 2013)).

¶ 13                                    ANALYSIS

¶ 14    We begin with *Greer*. In that case, the defendant filed a *pro se* postconviction petition that advanced to the second stage by default when the trial court failed to take any action on it within 90 days of being filed. A few months later, and after reviewing the defendant's *pro se* petition, appointed counsel filed a motion to withdraw. In the motion, appointed counsel stated that he had reviewed the record, the transcripts of proceedings, the State's Attorney's files, and had interviewed all relevant parties, including defendant, but could find no basis on which to

- 4 -

present any meritorious issue for review. Counsel supported his motion to withdraw with a brief purporting to comply with *Anders v. California*, 386 U.S. 738 (1967). Following a hearing, the trial court granted appointed counsel's motion to withdraw and *sua sponte* dismissed the defendant's postconviction petition. The appellate court affirmed in part and reversed in part, and defendant appealed to this court. 212 Ill. 2d 192 (2004).

¶ 15       In this court, the defendant's sole argument was that the trial court erred in granting appointed counsel's motion to withdraw. According to defendant, because nothing in the Act specifically allows for the withdrawal of appointed counsel, the trial court had no authority to grant such relief and in doing so denied the defendant his statutory right to counsel. In rejecting this argument, this court began by explaining that, under the Act, a defendant is entitled only to a "reasonable" level of assistance, which is lower than the constitutionally guaranteed level of assistance afforded to defendants at the trial phase. *Id.* at 204. As for what such representation looks like specifically, the court pointed to Rule 651(c), which requires postconviction counsel to make a showing in the record that he or she has (1) consulted with the petitioner to ascertain his allegations of deprivation of constitutional rights; (2) examined the record of proceedings at trial; and (3) made any amendments to *pro se* petitions that are necessary to adequately present the petitioner's allegations. *Id.* at 205. That said, the court promptly added that appointed counsel's obligations under Rule 651(c)'s third requirement do not include advancing "frivolous or spurious claims," as any amendments to such claims would not qualify as "necessary." *Id.* On the contrary, advancing such a claim might very well place counsel in violation of Illinois Supreme Court Rule 137 (eff. Jan. 4, 2013), which states that an attorney's signature on a pleading certifies that, after a reasonable inquiry, the attorney believes that the pleading is grounded in fact and warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. 212 Ill. 2d at 205. Consequently, the court concluded in *Greer* that nothing in the Act prevents appointed counsel from withdrawing if he or she determines that the defendant's petition is frivolous or patently without merit and that the attorney's ethical obligations therefore prohibit him or her from continuing representation. *Id.* at 209.

¶ 16       With that conclusion in place, the court in *Greer* then assessed whether the trial court's granting of appointed counsel's motion to withdraw was warranted in light of the specific facts of the case. In concluding that it was, the court included the following language, which in the intervening years has generated some measure of confusion in our appellate court:

> "Under the circumstances, the Act presents no impediment to withdrawal of counsel. Although we hasten to emphasize that the inability of postconviction counsel to 'properly substantiate' a defendant's claims is not the standard by which counsel should judge the viability of a defendant's postconviction claims, and that an attorney moving to withdraw should make some effort to explain why defendant's claims are frivolous or patently without merit, it nonetheless appears that counsel fulfilled his duties as prescribed by Rule 651(c), and the record before us supports counsel's assessment that the defendant's postconviction claims were frivolous and without merit. Consequently, though the procedure in the circuit court leaves something to be desired, defense counsel should be allowed to withdraw, and we affirm the judgment of the appellate court in that respect." (Emphases omitted.) *Id.* at 211-12.

For some panels of our appellate court, the foregoing language means that, when it comes to deciding whether appointed counsel should be permitted to withdraw, it is not the content of counsel's motion that controls but rather the record itself. More specifically, these courts have concluded that, under *Greer*, an appointed counsel's motion to withdraw is properly granted whenever the record affirmatively shows both that counsel *in fact* complied with Rule 651(c) and that defendant's *pro se* claims are *in fact* frivolous or patently without merit. See, *e.g.*, 2014 IL App (4th) 120901, ¶¶ 66, 71. To other panels of our appellate court, however, the foregoing language means that a "proper" motion to withdraw is one that addresses all of the defendant's *pro se* claims and provides at least some explanation as to why each of those claims is frivolous or patently without merit. See, *e.g.*, *People v. Komes*, 2011 IL App (2d) 100014, ¶¶ 28-29. According to these courts, a trial court may not grant a motion to withdraw that does not comply with this requirement. Nevertheless, even these courts agree that the granting of a facially deficient motion to withdraw may be affirmed on appeal where the record shows that counsel *in fact* complied with Rule 651(c) and that defendant's *pro se* claims are *in fact* frivolous or patently without merit, as a reversal in such cases would "serve[ ] no purpose." *Id.* ¶ 30.

¶ 17    In the case presently before us, both the State and defendant invoke *Greer*, insisting that it provides the controlling principles for resolving the present dispute. According to the State, *Greer* controls because, just as in that case, the record here plainly demonstrates both that appointed counsel complied with Rule 651(c) and that all of defendant's *pro se* claims are in fact frivolous or patently without merit. The State therefore insists that the trial court properly granted both appointed counsel's motion to withdraw and the State's motion to dismiss. According to defendant, *Greer* controls because, contrary to *Greer*'s admonition, appointed counsel's motion to withdraw did not explain why all of defendant's *pro se* claims are frivolous or patently without merit, and the trial court therefore should not have granted it. Moreover, defendant argues, the appellate court erred in affirming despite the trial court's error because, unlike the record in *Greer*, the record in this case shows neither that appointed counsel complied with Rule 651(c) nor that all of defendant's *pro se* claims are in fact frivolous or patently without merit.

¶ 18    While we recognize the tension that has arisen in our appellate court concerning *Greer*'s assessment of appointed counsel's motion to withdraw in that case, we do not believe that the present controversy provides the proper forum for resolving that tension. In fact, aside from its general affirmation that appointed counsel may withdraw from representation where his or her ethical obligations so require, *Greer* is of only limited value in adjudicating the current question. The reason for this is that the case before us stands in a very different procedural posture from *Greer*, such that the burdens and obligations of appointed counsel in this case are decidedly higher than those that were present in *Greer*.

¶ 19    Again, in *Greer*, the defendant's *pro se* petition advanced to the second stage not because the trial court made an affirmative determination that the petition was neither frivolous nor patently without merit. Rather, the petition advanced to the second stage by default because the trial court failed to take any action on it within 90 days of being filed. This means that, in *Greer*, appointed counsel was the *very first person* to lay eyes on and assess the *pro se* petition, a fact that this court noted numerous times in the course of that decision. In *Greer*'s statement of facts, for example, the court noted that the *pro se* petition advanced to the second stage by default and that "[o]bviously, there was never an initial determination as to merits of the

- 6 -

petition." 212 Ill. 2d at 200. Later, when setting forth the stages of a postconviction proceeding, the court explained that the process advances to the second stage and the appointment of counsel "only after a defendant's petition has been found to set forth the gist of a meritorious claim, or the court fails to take any action on the petition within 90 days of filing." (Emphasis omitted.) *Id.* at 204. At that point, the court emphasized that "[o]f course, in the latter instance, the petition may well be frivolous or patently without merit, and the defendant is appointed counsel only through the fortuity of the circuit court's inaction." *Id.* Finally, in assessing the potential ethical dilemma that appointed counsel might face when a *pro se* petition advances to the second stage by default rather than because of the trial court's affirmative finding that it is neither frivolous nor patently without merit, the court explained:

> "An attorney who is appointed to represent a defendant after the 90-day default provision of the Act is applied may well find that he or she represents a client attempting to advance arguments that are patently without merit or wholly frivolous, *a client whose petition would have been summarily dismissed had the circuit court timely considered the merits of the petition.*" (Emphasis added.) *Id.* at 207.

In other words, the court in *Greer* noted over and over again the fact the defendant's *pro se* petition in that case arrived at the second stage not because the trial court made an affirmative finding as to its merit but rather only because the trial court failed to make *any* assessment of its merit in the prescribed statutory period. And the practical effect of this was that, in terms of its potential merit, the defendant's *pro se* petition in that case arrived at the second stage in precisely the same condition that it arrived at the first stage, namely, unread and unassessed.

¶ 20    In this case, by contrast, defendant's *pro se* petition advanced to the second stage not by default but rather because the trial court at the first stage made an affirmative determination that, on its face, the petition was neither frivolous nor patently without merit. This means that, in stark contrast to the situation in *Greer*, appointed counsel in this case was not responsible for evaluating the facial sufficiency of defendant's *pro se* petition in the first instance. The trial court already had done this and concluded that the petition had sufficient merit to warrant further proceedings. Rather, appointed counsel's responsibility in this case was to take the petition that the trial court already had evaluated and present it to the court in proper legal form. Indeed, as this court has explained:

> "in granting a right to counsel for *pro se* petitioners whose petitions are not dismissed at the first stage of postconviction proceedings, the legislature recognized that most postconviction petitions would be filed by *pro se* prisoners who lacked the assistance of counsel in framing their petitions. [Citation.] *The duties imposed on postconviction counsel serve to ensure that the complaints of a prisoner are adequately presented.* To that end, the statute envisioned that counsel would consult with the prisoner either by mail or in person, ascertain his alleged grievances, examine the record of proceedings at the trial, and amend the *pro se* petition, if necessary." (Emphasis added.) *People v. Suarez*, 224 Ill. 2d 37, 46 (2007).

These principles, of course, are now codified in this court's Rule 651(c), the primary purpose of which "is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court." *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007). In other words, in circumstances such as this, appointed counsel's task is not to second guess the trial

court's first-stage finding but rather is to move the process forward by cleaning up the defendant's *pro se* claims and presenting them to the court for adjudication.

¶ 21    Now in saying all of this, we recognize that there may be occasions when, in the course of fulfilling his or her Rule 651(c) responsibilities, appointed counsel discovers something that ethically would prohibit counsel from actually presenting the defendant's claims to the court. In such instances, however, counsel may not simply move to withdraw on the grounds that the *pro se* claims are frivolous or patently without merit, as the trial court already has ruled expressly to the contrary. Rather, in such cases, appointed counsel bears the burden of demonstrating, with respect to each of the defendant's *pro se* claims, why the trial court's initial assessment was incorrect. In this sense, a motion to withdraw subsequent to a judicial determination that the *pro se* petition is not frivolous or patently without merit is tantamount to a motion to reconsider. A motion to reconsider sentence, for example, does not ask the court to conduct a new sentencing hearing but rather seeks to bring to the sentencing court's attention changes in the law, errors in the court's previous application of existing law, or newly discovered evidence that was not available at the time of the hearing. *People v. Burnett*, 237 Ill. 2d 381, 387 (2010). In similar fashion, a motion to withdraw filed subsequent to a trial court's affirmative decision to advance the petition to the second stage does not ask the trial court to conduct its first-stage assessment a second time but rather seeks to bring to the trial court's attention information that was not apparent on the face of the *pro se* petition at the time such assessment was made. Given this, we are convinced that, when filing such a motion, appointed counsel owes the trial court at least some explanation as to why, despite its superficial virtue, the *pro se* petition is *in fact* frivolous or patently without merit, and counsel owes this explanation with respect to each of the defendant's *pro se* claims. Or to put it another way, if we were willing to say in *Greer* that a motion to withdraw *should* include such explanations when the petition advances to stage two by default, we are now prepared to say that such a motion *must* include such explanations when the petition advances to the second stage by affirmative judicial action.

¶ 22    In arguing against this result, the State insists that requiring appointed counsel under such circumstances to explain why each of the *pro se* claims lacks merit places too high a burden on counsel. We disagree, and we do so for two reasons. To begin with, appointed counsel already has a duty under Rule 651(c) both to consult with the defendant to ascertain his or her contentions of deprivation of constitutional rights and to examine the record of the trial court proceedings. Where appointed counsel concludes after doing this that he or she is compelled for ethical reasons to withdraw, it is not asking too much to have counsel simply reduce his or her findings to writing and to include them in the motion to withdraw so that both the trial court and the reviewing courts have a basis for evaluating counsel's conclusion. Secondly, and more importantly, a request for leave to withdraw as counsel after a first-stage judicial determination that the *pro se* petition is neither frivolous nor patently without merit is an extraordinary request. The reason for this is that, in making such a determination and advancing the petition to the second stage, the trial court is granting the *pro se* defendant the first form of relief afforded by the Act, namely, the appointment of counsel to represent the defendant's interests going forward (725 ILCS 5/122-4 (West 2008)). A subsequent motion to withdraw is effectively an *ex post* request to deny the defendant that very relief, and it comes not from the State but *from defendant's own counsel*. Accordingly, we have no reservations about requiring appointed counsel to make the case in the motion to withdraw as to why the relief previously

granted his or her client should be undone, and to make that case with respect to each and every *pro se* claim asserted. Again, under circumstances such as these, the trial court affirmatively has determined that the appointment of counsel is warranted. And while such a determination in no way obligates appointed counsel to proceed where his or her subsequent Rule 651(c) examination reveals that the *pro se* petition is in fact frivolous or patently without merit, the burden for establishing that rests squarely on appointed counsel. Consequently, we hold that, where appointed counsel is either unable or unwilling to make that case with respect to each of the *pro se* claims contained in the petition, appointed counsel's motion to withdraw must be denied.

¶ 23 Turning now to the specific facts before us, we find that appointed counsel's motion to withdraw fell short of the standard set forth above. To be sure, between her motion to withdraw and the supporting brief, appointed counsel did an admirable job of explaining why she concluded that some of the claims raised in defendant's *pro se* petition lacked merit. In particular, appointed counsel explained why she concluded that defendant's claim relating to trial counsel's alleged failure to investigate defendant's history of mental illness lacked merit, as well as why she concluded that defendant's disproportionate sentencing concern was baseless. At no point, however, did appointed counsel ever address any of the claims relating to the alleged lies that trial counsel told defendant and his family so as to "force" a guilty plea. And while the State attempts to minimize the contribution these claims make to defendant's *pro se* petition, in fact these claims are specific, substantial, and sufficiently present in the petition to warrant appointed counsel's attention. To begin with, defendant alleges directly in the *pro se* petition that trial counsel told him falsely that he would receive a sentence of between 12 and 20 years in prison if he pleaded guilty. In addition, defendant alleges in the *pro se* petition that, because he had not been paid enough to take defendant's case to trial, trial counsel manipulated defendant's aunt and mother into convincing defendant to plead guilty, both by concealing exculpatory police and medical reports and by falsely guaranteeing a sentence of between 12 and 20 years in prison. These latter allegations were specifically supported by affidavits from defendant's mother and aunt, who not only corroborated defendant's account but also alleged that trial counsel's manipulation included affirmatively misrepresenting the strength of the State's evidence against defendant. These allegations, if true, raise serious concerns about trial counsel's conduct in this case. Yet appointed counsel's motion to withdraw nowhere mentions any of these claims, let alone explains why they are so lacking in both legal and factual merit as to ethically compel her withdrawal from the case. Now, to be clear, we are not saying that such an explanation either does not or cannot exist. Indeed, such an explanation very well may exist. What we *are* saying is that appointed counsel failed to include any such explanation in her motion to withdraw and that, for the reasons set forth above, that omission compelled the denial of counsel's motion. Accordingly, we hold that the trial court erred both in granting appointed counsel's motion to withdraw and in granting the State's motion to dismiss.

¶ 24 By way of remedy, we believe the appropriate course in this case is to reverse the judgments of both the appellate court and the trial court and to remand the cause for further second-stage proceedings. If upon remand appointed counsel wishes to file another motion to withdraw, he or she is certainly free to do so. To be viable, however, that motion must include at least some explanation as to why all of the claims set forth in defendant's *pro se* petition are either frivolous or patently without merit. We choose this course, rather than the course we

chose in *Greer*, for two reasons. First, we wish to underscore that we are serious about appointed counsel's burden when seeking to withdraw from representation following a judicial determination that the *pro se* petition is neither frivolous nor patently without merit. Second, we decline to do a job that properly belongs to appointed counsel. Again, in filing her motion to withdraw in this case, appointed counsel was representing to the court that, despite its first-stage finding that defendant's *pro se* petition is neither frivolous nor patently without merit, the *pro se* petition in fact is so utterly lacking in legal and factual support as to ethically compel her withdrawal from the case. Nevertheless, appointed counsel provided no explanation as to why this was the case with respect to a sizable portion of the *pro se* petition, leaving it to the trial and reviewing courts to figure it out for themselves. We decline to do this. If appointed counsel on remand remains convinced that he or she cannot both present defendant's claims to the court and remain faithful to his or her professional oath, then he or she is free to make that case to the trial court in a proper motion to withdraw. We will not, as a court of review, make that case for her.

¶ 25　As a final matter, we note that, in the event of a remand, defendant has requested that this court appoint new counsel to represent his interests going forward. In light of the history of this case, we deem that a reasonable request and therefore direct the trial court to appoint new postconviction counsel on remand. This action neither reflects nor represents any adverse assessment on this court's part concerning appointed counsel's performance below. Rather, it simply recognizes both the realities of the situation before us and the very real challenges that defendant and counsel would face on remand were this court to order counsel's continued participation.

¶ 26　　　　　　　　　　　　　　　　CONCLUSION

¶ 27　In sum, we hold that, where a *pro se* postconviction petition advances to the second stage on the basis of an affirmative judicial determination that the petition is neither frivolous nor patently without merit, appointed counsel's motion to withdraw must contain at least some explanation as to why all of the claims set forth in that petition are so lacking in legal and factual support as to compel his or her withdrawal from the case. The motion filed by appointed counsel in this case failed to meet this standard, and for this reason we reverse the judgments of both the appellate court and the circuit court and remand the cause for further proceedings consistent with this opinion, including the appointment of new postconviction counsel.

¶ 28　Judgments reversed.

¶ 29　Cause remanded.