# Illinois Official Reports

## Appellate Court

---

### *People v. Richey*, 2017 IL App (3d) 150321

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JASON D. RICHEY, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0321 |
| Filed | July 18, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 01-CF-495; the Hon. Sarah-Marie F. Jones, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Andrew J. Boyd, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Lawrence M. Bauer, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justices Carter and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1 After being found fit to stand trial, the defendant, Jason D. Richey, pled guilty to first degree murder (720 ILCS 5/9-1(a)(1) (West 2000)) in Will County circuit court and was sentenced to 45 years of imprisonment. He did not file a direct appeal. Three years later, he filed *pro se* petitions for relief from judgment and for postconviction relief, the latter of which alleged, *inter alia*, that trial counsel was ineffective for failing to file a motion to suppress his confession to police. The circuit court dismissed Richey's postconviction petition as frivolous and patently without merit. Richey appealed, and this court reversed and remanded for the appointment of new counsel to amend his *pro se* postconviction petition. *People v. Richey*, No. 3-04-0839, slip order at 9 (2009) (unpublished order under Supreme Court Rule 23) (hereinafter *Richey I*).

¶ 2 After remand, the expert who found Richey fit to stand trial evaluated him again for a retroactive determination of his ability to understand and waive his *Miranda* rights and to give a voluntary statement to police. The expert was unable to render an opinion, and postconviction counsel thereafter filed a motion to withdraw. The circuit court granted the motion, and the State subsequently filed a motion to dismiss Richey's postconviction petition. The court granted the State's motion, and Richey appealed. On appeal, Richey argues that the court erred when it granted postconviction counsel's motion to withdraw. We reverse and remand for further proceedings.

¶ 3                                                      FACTS

¶ 4 On March 22, 2001, Henry Baker was murdered. The following day, Richey confessed to the police that he killed Baker. On April 18, 2001, Richey was charged by indictment with first degree murder (720 ILCS 5/9-1(a)(1) (West 2000)). His public defender filed a motion for fitness examination, noting that he had been diagnosed with Major Depressive Affective Disorder with suicidal ideation as well as with Borderline Personality Disorder, had received psychiatric treatment on several occasions, had received electroconvulsive therapy, and had been taking several psychotropic medications.

¶ 5 On July 11, 2001, the State filed a superseding indictment that charged Richey with 11 criminal counts; 7 were alternative murder charges, and the other 4 were home invasion, robbery, armed robbery, and residential burglary.

¶ 6 On July 17, 2001, Dr. Randi Zoot compiled a report of her psychological examination of Richey. Dr. Zoot reviewed numerous records and conducted an interview of Richey in arriving at her opinion. She stated, *inter alia*, that Richey suffered from "a serious and significant recurrent mood disorder exacerbated by polysubstance abuse and alcohol dependence. He also has characteristics of a borderline personality disorder with antisocial traits." She opined "[t]here is no evidence to suggest that his mental disorder impaired his ability to understand the wrongfulness of his actions, however, alcohol would have played a significant role in loosening up his already marginal controls."

¶ 7 On September 26, 2001, Richey pled guilty to one count of first degree murder (720 ILCS 5/9-1(a)(2), (b)(6) (West 2000)). He was sentenced to 45 years of imprisonment in connection with his fully negotiated guilty plea. He did not file any posttrial motions and did not attempt to appeal his conviction and sentence.

¶ 8    On September 13, 2004, Richey filed *pro se* petitions for relief from judgment and postconviction relief. In relevant part, the latter petition alleged that trial counsel was ineffective for failing to file a motion to suppress his statement to police given his history of mental health issues. Specifically, Richey emphasized that he was on medication at the time that he gave the statement and that the police told him that unless he cooperated with them, they would not return him to the medical facility at which he was residing. The circuit court dismissed Richey's postconviction petition as frivolous and patently without merit, and Richey appealed.

¶ 9    On appeal, this court held that the circuit court erred when it dismissed Richey's postconviction petition as frivolous and patently without merit. *Richey I*, slip order at 9. In arriving at that conclusion, this court stated that "while [Dr. Zoot] opined that although defendant understood the wrongfulness of his actions his condition impaired his ability to control them. That lack of control could have affected what, if anything, defendant told police or his ability to understand the consequences of doing so." *Id.* at 8. Further, this court stated that had the motion to suppress been successful, Richey might have chosen not to plead guilty. *Id.* Thus, this court ruled that Richey had presented the gist of a constitutional claim and remanded the case for the circuit court to appoint counsel to amend Richey's postconviction petition. *Id.* at 9.

¶ 10    On remand, the circuit court appointed Dr. Zoot to examine Richey to determine his ability to comprehend his *Miranda* rights and his waiver of those rights at the time of his confession to the police in 2001.

¶ 11    On October 27, 2010, Dr. Zoot's evaluation was filed with the circuit court. Dr. Zoot stated that "the purpose of the evaluation is to determine the nature and extent of any mental illness present in the defendant, which may have affected his ability to understand his *Miranda* right and to knowingly and intelligently waive them and make a voluntary statement to police." Dr. Zoot again reviewed numerous records (including the portion of his 2001 confession to police that was on a DVD) and conducted another interview of Richey in arriving at the following opinions:

> "1. Mr. Richey's I.Q. has previously been tested in the low average range. He has received past diagnosis of attention deficit disorder, but there is no evidence in the records, or from my previous interview with Mr. Richey, that this significantly impacts his ability to process or understand information, but is related to his history of extreme impulsivity. Mr. Richey has and had at the time the intellectual capacity to understand the wording in the Miranda warning and understand the implication of waiving his rights.
>
> 2. The taped interview conducted at 7:51 p.m. shows Mr. Richey as appropriately responsive to interview questions. He does not appear confused. He does not appear somnolent and does not appear psychotic.
>
> 3. At the time of his reportedly being read his rights at 1:10 p.m., at least fourteen hours after his last drink, there would be no effects of intoxication at that time.
>
> 4. Mr. Richey does not recall his interview with the police and his mental state when first taken into police custody, is unclear. He has a history of self inflicted injuries, extreme mood instability, and was being treated with Depakote and Remeron. There is no indication in the records of when he received his last medications or the

impact, if any, that the lack of these medications would have had on his mental functioning.

> 5. Mr. Richey does not recall his interview with police or Miranda warning and cannot offer any information as to whether he perceived any physical or verbal coercion at the time of his statement."

Based on these findings, Dr. Zoot stated that she was "unable to render an opinion as to Mr. Richey's ability to knowingly, intelligently and voluntarily waive his Miranda rights at the time he made his statement on March 23, 2001."

¶ 12    On April 19, 2011, postconviction counsel filed a motion to withdraw, stating, *inter alia*, that because Dr. Zoot could not reach a conclusion about Richey's ability to voluntarily make a statement to police in 2001, there were no valid issues to raise in an amended postconviction petition. Counsel stated that "any arguments that Defendant's statements were involuntarily given would be purely speculative, and thus Defendant would not be able to meet the second prong of the *Strickland* test."

¶ 13    On May 10, 2011, the circuit court held a hearing on postconviction counsel's motion to withdraw. Counsel stood on his motion but also stated the following:

> "Judge, there are also some issues as to some evaluations that Mr. Richey feels should have been conducted in this matter by [trial counsel]. One of those evaluations was as to his ability to voluntarily waive Miranda.

> Judge, at this time—or since I got the case, we did have Dr. Zoot make that evaluation. Judge, after her evaluation of Mr. Richey, as to that particular issue, she indicated that because of various factors, including the passage of time, she was not able, at this point, to make any recommendation or any particular assessment of whether or not there was an issue there."

At the close of the hearing, the court granted postconviction counsel's motion to withdraw.

¶ 14    On May 31, 2011, the State filed a motion to dismiss Richey's postconviction petition, alleging, *inter alia*, the same argument, stated above, that was raised by postconviction counsel in his motion to withdraw.

¶ 15    The circuit court held a hearing on that motion on January 9, 2015. During Richey's argument, he stated that "what Dr. Zoot did was ask me questions about Miranda warnings. That has nothing to do with my argument. My argument was that I was on psych meds at the time of my statement." He also mentioned his "impulse control problem" and said that trial counsel "should have known that me talking to the police wasn't the best thing." The court took the matter under advisement and issued a ruling on March 11, 2015, that granted the State's motion to dismiss. Richey appealed.

¶ 16                                    ANALYSIS

¶ 17    On appeal, Richey argues that the circuit court erred when it granted postconviction counsel's motion to withdraw. Richey contends, *inter alia*, that postconviction counsel should not have been allowed to file the motion because this court already held that the *pro se* petition was not frivolous or patently without merit and that postconviction counsel's only job on remand was to put Richey's argument into the proper form for presentation to the circuit court.

¶ 18    The Post-Conviction Hearing Act provides a mechanism for criminal defendants to collaterally attack their convictions based on alleged deprivations of state or federal

- 4 -

constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2014); *People v. Greer*, 212 Ill. 2d 192, 203 (2004). At the first stage of postconviction proceedings, the circuit court conducts an initial review of the petition, without input from the State, to determine whether it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2014). A petition is frivolous or patently without merit if it lacks an arguable basis in law or fact, *i.e.*, if it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). If a petition passes this initial review (or if the circuit court fails to take action on the petition within 90 days), it progresses to the second stage of postconviction review. 725 ILCS 5/122-2.1(b) (West 2014).

¶ 19 At the second stage, an indigent defendant may have counsel appointed, and the State is permitted to respond or move to dismiss the petition. 725 ILCS 5/122-4, 122-5 (West 2014). It is the defendant's burden at this stage to make a "substantial showing of a constitutional violation." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). All well-pled facts in the petition not positively rebutted by the record are taken as true at this stage. *Id.* Our review of the dismissal of a postconviction petition at the second stage is *de novo*. *Id.*

¶ 20 We note that Richey's argument on appeal is aimed at the circuit court's granting of postconviction counsel's motion to withdraw. That decision is subject to review for an abuse of discretion. See, *e.g.*, *People v. Catalano*, 29 Ill. 2d 197, 204 (1963) (holding that "[t]he motion by an attorney for leave to withdraw for any reason is *** addressed to the sound discretion of the court"). An abuse of discretion occurs when the circuit court's "ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Caffey*, 205 Ill. 2d 52, 89 (2001).

¶ 21 Even though it was decided long after Richey's conviction became final, our supreme court's decision in *People v. Kuehner*, 2015 IL 117695, offers important insight for the resolution of this appeal. In *Kuehner*, a defendant filed a *pro se* postconviction petition that contained multiple allegations of ineffective assistance of counsel, both at the trial and appellate levels. *Id.* ¶ 5. At the first stage of review, the circuit court found that the petition was not frivolous or patently without merit; therefore, the court advanced the petition to the second stage. *Id.* ¶ 8. Subsequently, appointed counsel filed a motion to withdraw. *Id.* ¶ 9. While counsel explained in the accompanying motion why, in her opinion, some of the defendant's arguments were without merit, counsel did not address all of the defendant's arguments. *Id.* After a hearing, the circuit court granted the motion to withdraw and also granted the State's motion to dismiss the defendant's postconviction petition. *Id.*

¶ 22 In Kuehner's appeal, the supreme court stated that postconviction counsel's "task [was] not to second guess the trial court's first-stage finding but rather [was] to move the process forward by cleaning up the defendant's *pro se* claims and presenting them to the court for adjudication." *Id.* ¶ 20. However, the supreme court qualified that statement:

"Now in saying all of this, we recognize that there may be occasions when, in the course of fulfilling his or her Rule 651(c) responsibilities, appointed counsel discovers something that ethically would prohibit counsel from actually presenting the defendant's claims to the court. In such instances, however, counsel may not simply move to withdraw on the grounds that the *pro se* claims are frivolous or patently without merit, as the trial court already has ruled expressly to the contrary. Rather, in such cases, appointed counsel bears the burden of demonstrating, with respect to each

of the defendant's *pro se* claims, why the trial court's initial assessment was incorrect." *Id.* ¶ 21.

Further, the supreme court stated that "a motion to withdraw filed subsequent to a trial court's affirmative decision to advance the petition to the second stage does not ask the trial court to conduct its first-stage assessment a second time but rather seeks to bring to the trial court's attention information that was not apparent on the face of the *pro se* petition at the time such assessment was made." *Id.*

¶ 23 Because postconviction counsel in *Kuehner* failed to explain why *all* of the claims the defendant raised were meritless, the supreme court held that counsel's motion to withdraw was inadequate and should have been denied. *Id.* ¶ 23. The supreme court summarized its ruling as follows:

> "where a *pro se* postconviction petition advances to the second stage on the basis of an affirmative judicial determination that the petition is neither frivolous nor patently without merit, appointed counsel's motion to withdraw must contain at least some explanation as to why all of the claims set forth in that petition are so lacking in legal and factual support as to compel his or her withdrawal from the case." *Id.* ¶ 27.

¶ 24 We pause our analysis briefly to note, once again, that *Kuehner* was decided long after Richey's conviction became final. However, we emphasize that there is no issue in applying *Kuehner* retroactively to the instant case. Recently, our supreme court has clarified that generally, its "decisions apply to 'all cases that are pending when the decision is announced, unless this court directs otherwise.' " *People v. Price*, 2016 IL 118613, ¶ 27 (quoting *People v. Granados*, 172 Ill. 2d 358, 365 (1996)). In cases on collateral review, such as the instant case, this general rule of retroactive application exists unless the United States Supreme Court's analysis in *Teague v. Lane*, 489 U.S. 288 (1989) (plurality op.), applies. *Price*, 2016 IL 118613, ¶ 27. The *Teague* analysis applies only when "the new rule, had it been in effect at the time of trial, could have made a difference in the outcome." *Id.* ¶¶ 21-22. In this case, it is clear that, had *Kuehner* been decided before Richey's conviction became final, it would have had no impact whatsoever on that outcome. Accordingly, we will continue with our *Kuehner*-based analysis of the instant case.

¶ 25 *Kuehner* demonstrates that it is in fact possible for postconviction counsel to file a motion to withdraw at the second stage of postconviction proceedings after a court has determined that the *pro se* petition was neither frivolous nor patently without merit. *Kuehner*, 2015 IL 117695, ¶ 21. Thus, it is clear in this case that there was nothing inherently improper about postconviction counsel filing a motion to withdraw.

¶ 26 Pursuant to *Kuehner*, the next question to address is whether postconviction counsel included "at least some explanation as to why all of the claims set forth in that petition are so lacking in legal and factual support as to compel his or her withdrawal from the case." *Id.* ¶ 27. For the following reasons, we answer this question in the negative.

¶ 27 We reiterate that the only claim from Richey's *pro se* postconviction petition that is relevant here is his argument that defense counsel failed to file a motion to suppress his statement to police. Richey argued in his *pro se* petition that he was on medication at the time he gave the statement and that the police told him that he would not be returned to the medical facility at which he was residing unless he cooperated with the police. Our decision in *Richey I* acknowledged this argument:

"Defendant asserts counsel should have based a motion to suppress statements on his history of mental health treatment, his ingestion of medication at the time he gave a statement to police, and on police threats defendant would be unable to return to his residence at the mental health facility should he not cooperate." *Richey I*, slip order at 4.

Again, we held that Richey's argument was neither frivolous nor patently without merit. See *id.* at 9.

¶ 28 Our review of the record in this case reveals that postconviction counsel did not include any explanation of why he believed Richey's argument lacked merit. In fact, on remand, postconviction counsel pursued a different question regarding the filing of a motion to suppress—namely, whether Richey was capable of waiving his *Miranda* rights—and counsel sought a retroactive determination from Dr. Zoot on that capacity. As Dr. Zoot stated in her 2011 evaluation, "the purpose of the evaluation is to determine the nature and extent of any mental illness present in the defendant, which may have affected his ability to understand his *Miranda* right and to knowingly and intelligently waive them and make a voluntary statement to police." Richey himself acknowledged at the hearing on the State's motion to dismiss that this was not his argument.

¶ 29 Because postconviction counsel did not address the actual argument made by Richey in his *pro se* petition, we conclude that counsel's motion to withdraw did not meet the *Kuehner* standard that the motion contain "at least some explanation as to why all of the claims set forth in that petition are so lacking in legal and factual support as to compel his or her withdrawal from the case." *Kuehner*, 2015 IL 117695, ¶ 27. Accordingly, we reverse the circuit court's grant of the State's motion to dismiss and remand for further second-stage postconviction proceedings, including the appointment of new postconviction counsel. *Id.* ¶¶ 25, 27.

¶ 30                                    CONCLUSION

¶ 31 The judgment of the circuit court of Will County is reversed, and the case is remanded for further proceedings.

¶ 32 Reversed and remanded.