NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180080-U

NO. 4-18-0080

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 13, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| DAVID D. BRUNNER, | ) | No. 06CF518 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Peter C. Cavanagh, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed the trial court's order granting postconviction
counsel's motion to withdraw because it did not comply with the requirements set
forth in *People v. Kuehner*, 2015 IL 117695, 32 N.E.3d 655.

¶ 2    In May 2013, defendant, David D. Brunner—who was convicted in 2010 of four

counts of first degree murder, robbery, and possession of a stolen vehicle—*pro se* filed a petition

for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1

*et seq.* (West 2012)). The trial court found that defendant's petition "state[d] a constitutional

claim" and docketed it for second-stage proceedings. In July 2014, appointed postconviction

counsel filed a motion to withdraw, which the trial court granted the following month.

Ultimately, the court dismissed defendant's postconviction petition in January 2018.

¶ 3        Defendant appeals, arguing his petition made a substantial showing of three

constitutional violations, thus entitling him to an evidentiary hearing. However, because

counsel's motion did not comply with the requirements of *People v. Kuehner*, 2015 IL 117695,

32 N.E.3d 655, we need not address defendant's arguments and instead reverse the trial court's

judgment and remand for further second-stage proceedings.

¶ 4                                I. BACKGROUND

¶ 5                               A. Procedural History

¶ 6        Shortly after police discovered Judy Schermerhorn's strangled body in her home

in April 2006, the State charged defendant with four counts of first degree murder (720 ILCS

5/9-1(a)(1), (a)(2), (a)(3) (West 2004)), robbery (720 ILCS 5/18-1(a) (West 2004)), and

possession of a stolen vehicle (625 ILCS 5/4-103(a)(1) (West 2004)). In May 2010, a jury

convicted defendant of all six counts, and the trial court subsequently sentenced him to

concurrent prison sentences of 55 years for first degree murder, 6 years for robbery, and 6 years

for possession of a stolen vehicle. A summary of the evidence may be found in our resolution of

defendant's direct appeal, in which we affirmed the trial court's imposition of a 55-year prison

sentence for first degree murder. See *People v. Brunner*, 2012 IL App (4th) 100708, 976 N.E.2d

27.

¶ 7                            B. The Postconviction Petition

¶ 8        In May 2013, defendant *pro se* filed a postconviction petition in which he alleged

(1) five due process violations, (2) six violations of his right to the effective assistance of counsel

(five trial and one appellate), (3) actual innocence, and (4) an "abuse of discretion" by the trial

and appellate courts. Defendant attached three letters sent to him by one of the State's key

witnesses and portions of a mental health evaluation report prepared by a psychiatrist prior to

trial. In the letters, the witness explains to defendant that she was coerced by the State to testify against him and she knows defendant never told her that he killed the victim. As for the report, it indicated defendant had been diagnosed with (1) "cocaine dependence, chronic, severe," (2) "major depression, recurrent," and (3) "post-traumatic stress disorder." The ultimate findings listed in the report stated, in relevant part, as follows: "In my opinion, at the time of his first police interview, [defendant], as the result of his heavy cocaine binge and lack of sleep, was impaired to the extent that it would have been difficult for him to knowingly and voluntarily make a statement to the police. However, almost all of his incriminating statements came in the second interview."

¶ 9       The same day defendant filed his petition, the trial court appointed counsel and docketed defendant's petition for second-stage proceedings, "find[ing] that the Petition state[d] a constitutional claim." The State timely filed a motion to dismiss.

¶ 10                    C. Postconviction Counsel's Motion
                      To Withdraw and the Trial Court's Rulings

¶ 11      In July 2014, postconviction counsel filed a motion to withdraw. In it, counsel provided a brief "Jurisdictional and Evidentiary Statement," which discussed the procedural history of the case, but no "Statement of Facts" section. Counsel then identified each of the claims defendant had raised in his petition and explained why he believed they were meritless. For some of the explanations, counsel cited to facts contained in the report of proceedings; for others, he merely cited to defendant's petition and its attached exhibits.

¶ 12      In August 2014, the trial court conducted a hearing on counsel's motion to withdraw. Postconviction counsel explained that he was seeking leave to withdraw because he found "no gist of a constitutional claim." The court then had the following exchange with defendant:

"THE COURT: All right, [defendant], based upon—I mean, if I get it, your desire is that the case go a different direction, but you have a skilled attorney who is not probably going the direction you want to go in, so I assume—well, I'm not going to assume. Are you objecting to his being removed, or do you want him to stay on the case and continue with the petition?

DEFENDANT: I'd like somebody to do their job.

THE COURT: That's the next issue. Well, he has done his job. He's telling you something you don't want to hear, and I get that, and I respect that.

* * *

THE COURT: As to, if you're allowed other counsel, that's another issue.

DEFENDANT: Okay.

THE COURT: As to [postconviction counsel], are you objecting to his removal?

DEFENDANT: No.

THE COURT: Okay, so [postconviction counsel] will be removed. His motion will be granted, and we can take up the next issue."

After this exchange, the court found that there was no reason for the appointment of new postconviction counsel and informed defendant that he would have to seek private representation or proceed *pro se* at the upcoming hearing on the State's motion to dismiss.

¶ 13 In December 2017, following several continuances and additional *pro se* pleadings by defendant, the trial court conducted a hearing on the State's motion to dismiss defendant's petition. Defendant appeared *pro se* at the hearing. In January 2018, the trial court

- 4 -

granted the State's motion in a written order, concluding that defendant failed to make a substantial showing of any constitutional violation.

¶ 14    This appeal followed.

¶ 15                    II. ANALYSIS

¶ 16    On appeal, defendant argues his petition made a substantial showing of three constitutional violations, thus entitling him to an evidentiary hearing. However, because postconviction counsel did not comply with the requirements of *Kuehner*, discussed in more detail below, we need not address defendant's arguments and instead reverse and remand for further second-stage proceedings.

¶ 17                    1. *The Applicable Law*

¶ 18    The Act provides a three-stage procedure for criminal defendants to collaterally attack their convictions based on a substantial denial of their constitutional rights. *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615; 725 ILCS 5/122-2.1 (West 2012). Because most postconviction petitions are drafted by *pro se* defendants, "the threshold for a petition to survive the first stage of review is low." *Id.* ¶ 24. The trial court may only dismiss the petition at the first stage if it determines the petition "is frivolous or is patently without merit" (725 ILCS 5/122-2.1(a)(2) (West 2012)), meaning the petition has no arguable basis in law or fact. *Allen*, 2015 IL 113135, ¶ 25. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation. An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *People v. Hodges*, 234 Ill. 2d 1, 16, 912 N.E.2d 1204, 1212 (2009). If the petition is not dismissed as being frivolous or patently without merit, then the trial court advances the petition to the second stage of proceedings. 725 ILCS 5/122-2.1(b) (West 2012). A petition may also

advance to the second stage simply through the trial court's failure to take action on the petition within 90 days of its filing (*i.e.*, the petition advances by default). *Kuehner*, 2015 IL 117695, ¶ 19.

¶ 19    When a petition advances to the second stage, counsel is appointed to investigate the defendant's claims and make any amendments necessary for an adequate presentation of those claims. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). If upon investigation appointed counsel finds the claims to be meritless, counsel has an ethical obligation to file a motion to withdraw from further representation. *Kuehner*, 2015 IL 117695, ¶ 15. However, a trial court is prohibited from granting that motion unless counsel has first satisfied certain requirements, and these requirements vary depending on how the petition advanced to the second stage. *People v. Fathauer*, 2019 IL App (4th) 180241, ¶ 43. If the petition advanced by default, "an attorney moving to withdraw should make some effort to explain *why* [the] defendant's claims are frivolous or patently without merit ***." *People v. Greer*, 212 Ill. 2d 192, 212, 817 N.E.2d 511, 523 (2004). However, when the petition advances through an affirmative determination by the trial court that the *pro se* petition is neither frivolous nor patently without merit—which is what happened in the instant case—the requirements are "decidedly higher." *Kuehner*, 2015 IL 117695, ¶ 18.

¶ 20    The requirements are higher in the latter scenario because a motion to withdraw in this procedural posture "is an extraordinary request." *Id.* ¶ 22. It is essentially an *ex post* request to deny the defendant the first form of relief under the Act—the appointment of counsel—"and it comes not from the State but *from defendant's own counsel*." (Emphasis in original.) *Id.* Further, a motion to withdraw under these circumstances "is tantamount to a motion to reconsider" because it "does not ask the trial court to conduct its first-stage assessment a second time but

rather seeks to bring to the trial court's attention information that was not apparent on the face of the *pro se* petition at the time such assessment was made." *Id.* ¶ 21. "Given this \*\*\*, appointed counsel owes the trial court at least some explanation as to why, despite its superficial virtue, the *pro se* petition is *in fact* frivolous or patently without merit, and counsel owes this explanation with respect to each of the defendant's *pro se* claims." (Emphasis in original.) *Id.* Accordingly. in determining whether the motion to withdraw satisfied the requirements enumerated by the supreme court in *Kuehner*, "we must address whether postconviction counsel (1) provided some information that was not apparent on the face of the petition that (2) demonstrated each of defendant's *pro se* claims was in fact frivolous and patently without merit." *Fathauer*, 2019 IL App (4th) 180241, ¶ 50.

¶ 21                                    2. *This Case*

¶ 22        Here, postconviction counsel did not demonstrate (1) with information not apparent on the face of defendant's petition (2) that each of defendant's claims was *in fact* frivolous and patently without merit. For instance, defendant claimed trial counsel was ineffective for failing to file a motion to suppress incriminating statements he made during two custodial interrogations based on an expert's report that counsel had received prior to trial. Defendant attached portions of the report to his petition. The report noted defendant had a "severe cocaine dependence" and had been diagnosed with "major depression, recurrent" and "post-traumatic stress disorder." It also described defendant's mental state and level of impairment during the two interrogations and how his mental state would have affected the voluntariness of his statements. The report concluded that during the first interrogation defendant "was impaired to the extent that it would have been difficult for him to knowingly and voluntarily make a statement to the police."

- 7 -

¶ 23        As for the second interrogation, the report noted that defendant showed "significant improvement" in mental health and appeared "much less impaired." The report concluded that "[t]he depression [defendant] was experiencing at the time of the second interview could certainly have influenced, to some extent, his willingness to make incriminating statements to the police."

¶ 24        In postconviction counsel's motion to withdraw, he identified this ineffective-assistance-of-counsel claim and concluded it was meritless. Counsel did not, however, provide any new information not already apparent on the petition's face to support his conclusion. He simply cited to the same portions of the report to which defendant had referred in his petition. Thus, counsel essentially asked the trial court to conduct its first-stage assessment a second time. Counsel did not bring new information to the trial court's attention as *Kuehner* required him to do. See *Kuehner*, 2015 IL 117695, ¶ 23.

¶ 25        Further, counsel did not demonstrate that defendant's claim was *in fact* meritless. Noticeably absent from counsel's analysis of the claim is any mention of the report concluding that during the first interrogation defendant "was impaired to the extent that it would have been difficult for him to knowingly and voluntarily make a statement to the police." Instead, counsel highlighted the portions of the report that state (1) defendant was less impaired during the second interrogation and (2) "the bulk of incriminating statements" came from this interrogation. However, these portions of the report do not demonstrate that the incriminating statements from the first interrogation would not have been suppressed; nor do they show that the incriminating statements from the second interrogation were not tainted by the potentially involuntary statements from the first interrogation.

¶ 26 Accordingly, we conclude that postconviction counsel did not demonstrate, with information not apparent on the petition's face, that each of defendant's claims were *in fact* frivolous and patently without merit. Because of this deficiency, the trial court erred by granting counsel's motion to withdraw, and we reverse and remand for further second-stage proceedings. See *id.* ¶¶ 22, 24.

¶ 27 We wish to point out that we are not criticizing postconviction counsel for the deficiencies we have noted in his motion to withdraw. After all, that motion was filed a year before the supreme court issued its decision in *Kuehner*, which clarified what such a motion must contain.

¶ 28 As a last matter, because postconviction counsel is currently serving as the Sangamon County State's Attorney, we direct the trial court to appoint new postconviction counsel on remand.

¶ 29 III. CONCLUSION

¶ 30 For the reasons stated, we reverse the trial court's judgment and remand the case for further second-stage proceedings, including the appointment of new postconviction counsel. In doing so, we express no view on the ultimate merit of defendant's claims or what action new postconviction counsel should take on remand.

¶ 31 Reversed and remanded with directions.