NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180633-U

NO. 4-18-0633

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 8, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER WILLIAMS, Defendant-Appellant. | ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Champaign County No. 10CF362 Honorable Roger B. Webber, Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) In the evidentiary hearing on defendant's amended petition for postconviction relief, the circuit court did not commit manifest error by believing the testimony of plea counsel over the testimony of defendant.

(2) Postconviction counsel who signed the amended petition made the certifications required by Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), and defendant has failed to rebut the presumption of reasonable assistance raised by those certifications.

¶ 2    According to the records of the Illinois Department of Corrections, of which we take judicial notice (see *People v. House*, 2019 IL App (1st) 110580-B, ¶ 36), defendant, Christopher Williams, inmate No. B53792, is serving a year of mandatory supervised release for unlawfully possessing cannabis with the intent to deliver it (720 ILCS 550/5(c) (West 2010)). See the Illinois Department of Corrections website (https://www2.illinois.gov/idoc/Offender/Pag es/InmateSearch.aspx (last visited Sept. 30, 2020)). He had pleaded guilty to this offense in the

Champaign County circuit court, which had sentenced defendant to five years' imprisonment. While serving his prison term, he petitioned for postconviction relief. After an evidentiary hearing, the circuit court denied his amended petition. He appeals.

¶ 3        The material facts in this appeal are undisputed, making our standard of review *de novo*. See *People v. English*, 2013 IL 112890, ¶ 23; *People v. Coleman*, 2015 IL App (4th) 131045, ¶ 67. We decide, as a matter of law, that defendant failed to prove a substantial violation of a constitutional right. Therefore, we affirm the judgment.

¶ 4                                I. BACKGROUND

¶ 5                         A. The Guilty Plea Hearing

¶ 6        Count I of the information charged defendant with unlawfully possessing a controlled substance with the intent to deliver it (720 ILCS 570/401(c)(2) (West 2010)). Count II charged him with unlawfully possessing cannabis with the intent to deliver it (720 ILCS 550/5(c) (West 2010)).

¶ 7        Defendant appeared with his appointed counsel, Scott Schmidt, and proposed pleading guilty to count II in return for the State's promise to dismiss count I. To make sure that defendant's proposed guilty plea was adequately informed, the circuit court told defendant the sentence he could receive for count II, and the court confirmed that defendant understood. The court admonished defendant:

> "The possible sentence is one to six years['] incarceration in the Department of
> Corrections. A fine from $1.00 to $25,000.00, or some combination of time in
> prison and fine within those ranges. Any time in prison would be followed by a
> year of mandatory, supervised release. Any community[-]based sentence the Court

might consider could extend for as much as thirty months. Do you understand the possible sentences involved here?

THE DEFENDANT: Yes."

When giving that affirmative answer, defendant had his hand in front of his mouth, partly muffling his answer. So, the court politely requested him to remove his hand from his mouth and to answer again so that the court reporter could clearly hear what he was saying. Defendant answered again: "I said yes."

¶ 8        The circuit court thanked defendant for his cooperation and next asked him whether "anyone [had] threatened [him] or intimidated [him], or done anything to force [him] to plead guilty." Defendant answered: "No."

¶ 9        The circuit court then explained to defendant that, under the plea agreement as the court understood it, count I would be dismissed and a street-value fine would be imposed but, otherwise, the sentence would be left up to the court's determination:

"My understanding of the plea negotiations in your case is that if you plead guilty and your plea is accepted, *there is no joint recommendation at the moment as to what sentence would be imposed, that would be determined at a separate sentencing hearing held on a different date*. Prior to that hearing, the Probation and Court Services Department would be asked to prepare a report that would give the Court information about your family situation, your progress in school, your work history, any other times other than this one where you have been involved with the police or the [c]ourts. The pretrial investigation would also include a [Treatment Alternatives to Street Crime (TASC)] evaluation and evaluation for your possible participation in the Champaign County Drug Court Program.

At the sentencing hearing, the State's Attorney's representative could present evidence and argument as to *what a proper sentence should be*. Although they have agreed that they will dismiss [c]ount I, the other charge brought against you at the sentencing hearing, and also there's an agreement that the street[-]value fine that would be required as part of any sentence entered in such a hearing would be in the amount of $100.00. At the hearing, Mr. Schmidt could present evidence and argument on your behalf. *The Court would then select some order within the range of possibilities I just described to you*. Do you understand that that's the situation?

THE DEFENDANT: Yes, sir." (Emphases added.)

¶ 10　　Next, the circuit court asked defendant if anyone had made him any promises other than those in the plea agreement:

"Has anyone made any promises to you other than the ones I just recited to get you to plead guilty?

THE DEFENDANT: No, sir."

¶ 11　　　　　　　B. The *Pro Se* Petition for Postconviction Relief

¶ 12　　About five years after he was sentenced, defendant petitioned for postconviction relief. His *pro se* petition raised four claims.

¶ 13　　First, Schmidt had rendered ineffective assistance by advising defendant that if defendant pleaded guilty to count II, he would be sentenced to probation instead of imprisonment. Defendant alleged that this false advice had made his guilty plea unintelligent and, hence, invalid.

¶ 14　　Second, by his lack of preparation and unwillingness to go to trial, Schmidt had coerced defendant into pleading guilty.

¶ 15    Third, defendant's succession of attorneys had rendered ineffective assistance by failing to move for the suppression of defendant's statements to the police.

¶ 16    Fourth, Schmidt had rendered ineffective assistance by telling defendant that his sentencing hearing was scheduled for April 18, 2013, whereas it really was scheduled for April 17, 2013. Because of this incorrect information, defendant missed the sentencing hearing and was sentenced *in absentia*, as he learned when he arrived at the courthouse on April 18, 2013.

¶ 17    We note, however, that it was not until November 2017 that defendant was arrested on a warrant and began serving his five-year prison sentence (at 50%). We gather that he has served his prison term since he is out on mandatory supervised release (a "Parole Date" of January 8, 2020, and a "Projected Discharge Date" of January 8, 2021, according to the records of the Department of Corrections).

¶ 18    C. The Amended Petition for Postconviction Relief and
        the Ruling on the State's Motion for Dismissal

¶ 19    The circuit court concluded that the *pro se* petition stated the gist of a meritorious claim. Therefore, the court appointed the public defender's office to represent defendant in the postconviction proceedings.

¶ 20    An amended petition for postconviction relief, signed by an assistant public defender, Morgan A. Farrington, was filed. The amended petition raised three claims.

¶ 21    First, because of Schmidt's lack of preparation for trial, defendant "felt forced to plead guilty," making his guilty plea involuntary.

¶ 22    Second, because Schmidt falsely assured defendant that he "would receive a sentence of probation if he plead[ed] guilty" and, in the guilty plea hearing, defendant gave the judge only the answers that Schmidt had coached him to give, the guilty plea was unintelligent.

¶ 23        Third, the sentence "violate[d] the proportionate penalty and due process clauses of the United States and Illinois Constitutions [(Ill. Const. 1970, art. I, §§ 2, 11; U.S. Const., amends. V, XIV, § 1)] by being cruel and unusual." The amended petition argued: "The sentence imposed is not in keeping with [defendant's] family situation, economic status, education, occupational or personal habits. Said mitigation factors indicate that the sentence was more than plainly excessive."

¶ 24        Then, under the heading of "Other Post-Convictions Claims," the amended petition listed two *pro se* claims that defendant "also wish[ed] to make" but which Farrington herself felt ethically unable to make. Farrington wrote: "Governed by the recent Illinois Supreme Court case of *People v. Kuehner*, 2015 IL 117695, the undersigned attorney cannot sign this pleading as to each of the following claims because of a professional inability to pursue claims believed to be meritless."

¶ 25        The first *pro se* claim that Farrington declined to adopt was the claim of "[i]neffective assistance of trial counsel for failure to file a Motion to Suppress." Farrington explained: "The undersigned attorney believes this claim to be meritless because it is well settled that defense counsel's choice of what motions will be filed is considered a tactical decision and within the discretion of defense counsel."

¶ 26        The second *pro se* claim from which Farrington distanced herself was the claim that Schmidt had rendered ineffective assistance by telling defendant the wrong date for the sentencing hearing. Farrington did not explain why she deemed this *pro se* claim to be unmeritorious. Farrington merely submitted an affidavit by Trina Smith, defendant's "girlfriend," who had heard Schmidt tell defendant that the date of the sentencing hearing was April 18, 2013.

¶ 27    Also accompanying the amended petition was a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), in which Farrington represented as follows:

"I have consulted with [defendant] by phone, mail, electronic means[,] or in person to ascertain his contentions of deprivation of constitutional rights, have examined the court file and the record of proceedings at *the trial*, and have made amendments to [defendant's] *pro se* postconviction pleading as necessary for adequate presentation of his contentions." (Emphasis added.)

In the amended petition itself, however, Farrington certified that she "ha[d] reviewed [defendant's] *pro se* Petition for Post-Conviction Relief, the court file, [and] *the transcripts of the plea and sentencing hearing*" and that she had "consult[ed] with the Defendant." (Emphasis added.)

¶ 28    The State moved for the dismissal of the amended petition, arguing that it failed to set forth, in well-pleaded facts, a claim of a substantial deprivation of constitutional rights.

¶ 29    After hearing arguments on the State's motion for dismissal, in which the public defender, Jamie Miller-Jones, argued for defendant, the circuit court found one well-pleaded claim that was unrebutted by the record: that Schmidt had promised defendant he would receive probation and had coached defendant how to answer the questions the judge would ask in the guilty plea hearing. This surviving claim was set for an evidentiary hearing.

¶ 30            D. The Evidentiary Hearing on the Surviving Claim

¶ 31    Miller-Jones represented defendant in the evidentiary hearing as well. She brought along a Rule 651(c) certificate, in which she stated as follows:

"I have consulted with [defendant], by phone, mail, electronic means[,] or in person to ascertain his or her [*sic*] contentions of deprivation of constitutional rights, have

examined the court file and *the record of proceedings at the trial*, and have made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of [defendant's] contentions." (Emphasis added.)

¶ 32    In the evidentiary hearing, defendant testified that Schmidt had falsely assured him he would receive probation as a result of pleading guilty to count II. Also, according to defendant's testimony, Schmidt pressured defendant into pleading guilty and coached him how to answer the questions the judge would ask in the guilty plea hearing.

¶ 33    Schmidt testified to the contrary. Although he could not specifically remember representing defendant, he denied doing the things that defendant accused him of doing. Such behavior, Schmidt testified, was contrary to his professional ethics, and at no time in his career as an attorney had he ever committed the misconduct that defendant alleged.

¶ 34    The circuit court believed Schmidt over defendant. Accordingly, the court entered a judgment in the State's favor and against defendant on his amended petition for postconviction relief.

¶ 35    This appeal followed.

¶ 36                                II. ANALYSIS

¶ 37    A. Defendant's Challenge to the Decision Against Him in the Third-Stage Hearing

¶ 38    The circuit court found Schmidt to be more credible than defendant. On appeal, defendant challenges that assessment of credibility, contending that it is manifestly erroneous (see *English*, 2013 IL 112890, ¶ 23).

¶ 39    Let us assume, for the sake of argument, that defense counsel's defective advice can override the contrary admonitions the judge subsequently gives the defendant in the guilty plea hearing and which the defendant acknowledges understanding. But see *People v. Ramirez*, 162 Ill.

2d 235, 245 (1994); *People v. Radunz*, 180 Ill. App. 3d 734, 742 (1989); *People v. Robinson*, 157 Ill. App. 3d 622, 628-29 (1987). We are unconvinced it is "clearly evident, plain, and indisputable" that the circuit court erred by believing Schmidt over defendant. (Internal quotation marks omitted.) *People v. Morgan*, 212 Ill. 2d 148, 155 (2004).

¶ 40    In the evidentiary hearing on his amended postconviction petition, defendant testified that, in the guilty plea hearing, he lied to the circuit court by denying that any promises had been made to him other than those in the plea agreement. Essentially, defendant's plea to the court was "I lied to you then, but I'm telling the truth now." The trouble is, once a party admits a capacity to lie when making solemn declarations to the court, the resulting taint of unreliability does not vanish with a wave of the hand. Defendant was a self-professed deceiver. Schmidt was not. Therefore, it cannot be reasonably contended that defendant was *indisputably* more credible than Schmidt. See *id.*

¶ 41    Defendant contends that because Schmidt could remember nothing about his representation of defendant, Schmidt's denial of defendant's allegations was not even an effective denial. Because of Schmidt's total lack of memory, he was in no position, defendant argues, to deny defendant's allegation that he promised probation to defendant or that he coached defendant on how to answer the questions the judge would ask in the guilty plea hearing.

¶ 42    By defendant's logic, no one would be in a position to deny a range of egregious misconduct. Murder, for example, can be committed in a moment, but no one is able to remember every moment of his or her past. Therefore, by defendant's reasoning, no one would be in a position to deny committing murder. This, of course, would be sophistry. If a form of serious misconduct is deeply contrary to one's morals and practice, one probably would remember committing the misconduct if one ever committed it. The watershed moment would stick in the memory. For most

people of normal moral sensibilities, having no recollection of doing something despicable is a fairly reliable sign that they never did that despicable thing. Therefore, despite Schmidt's lack of memory, the circuit court would reasonably credit his denial. We find no manifest error in the circuit court's decision in the evidentiary hearing on the amended postconviction petition. *English*, 2013 IL 112890, ¶ 23.

¶ 43        B. Compliance With the Certification Requirements in Rule 651(c)

¶ 44            1. The Sufficiency of Farrington's Certifications

¶ 45        Defendant criticizes Miller-Jones's Rule 651(c) certificate as facially defective because he was convicted on his guilty plea and, consequently, there was no trial. And since there was no trial, there was no "record of the proceedings at the trial" for Miller-Jones to "have examined," contrary to her Rule 651(c) certification.

¶ 46        Rule 651(c) speaks of "examin[ing]" only "the record of the proceedings at the trial" (as if a trial were the only way a defendant could be convicted):

> "The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, *has examined the record of the proceedings at the trial*, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." (Emphasis added.) Ill. S. Ct. R. 651 (c) (eff. Jul.1, 2017).

Even so, attorneys should not certify to a court that they have "examined the record of the proceedings at the trial" unless they have examined the record of the proceedings at the trial—an impossibility, obviously, if the defendant's guilty plea obviated a trial. See Ill. S. Ct. R. 137(a)

- 10 -

(eff. Jan. 1, 2018) (providing that "[t]he signature of an attorney *** constitutes a certificate by him that he has read the *** document" and that, "to the best of his knowledge, information, and belief formed after reasonable inquiry[,] it is well grounded in fact"). If the proceeding was a guilty plea hearing instead of a trial, postconviction counsel should modify the language of Rule 651(c) accordingly instead of making a false representation.

¶ 47        Farrington made the same mistake in her Rule 651(c) certificate that Miller-Jones made in her Rule 651(c) certificate. In the amended petition for postconviction relief, however, Farrington cured her error by certifying that she had reviewed the record of the guilty plea hearing.

¶ 48        Farrington's certifications are the ones that count because she is the attorney who signed—and, presumably, therefore, drafted—the amended petition for postconviction relief. The certifications in Rule 651(c) pertain specifically to the amendment of the *pro se* petition or to the decision that no such amendment is necessary. The attorney consults with defendant and examines the record with a view to possibly amending the *pro se* petition. The supreme court must have contemplated, then, that the attorney who signed the Rule 651(c) certification would be the attorney who drafted the amended petition or, alternatively, decided to make no amendment to the *pro se* petition.

¶ 49        That attorney, in the present case, seems to be Farrington. By the time Miller-Jones appeared in the second-stage hearing, an amended petition, signed by Farrington, had been filed, and the Rule 651(c) tasks had been completed by Farrington—or at least Farrington's certifications raise that presumption (see *People v. Rivera*, 2016 IL App (1st) 132573, ¶ 36). Thus, the additional Rule 651(c) certificate by Miller-Jones was superfluous. "Rule 651(c)'s requirements must be met only once ***." *People v. Marshall*, 375 Ill. App. 3d 670, 682 (2007).

¶ 50        2. The Question of Whether Defendant Has Rebutted the Presumption
That Farrington Rendered Reasonable Assistance

- 11 -

in Satisfaction of Rule 651(c)

¶ 51        Because Farrington's certifications are not contradicted by the record, "there is a rebuttable presumption that postconviction counsel acted reasonably." *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 26. "[T]o overcome this presumption, defendant must demonstrat[e] his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." (Internal quotation marks omitted.) *Id.*

¶ 52        By defendant's understanding, Rule 651(c), as interpreted by *People v. Milam*, 2012 IL App (1st) 100832, ¶ 35, required postconviction counsel to "present[ ] *all* of a petitioner's desired claims to the court," to quote from defendant's brief. Postconviction counsel in this case did not do so. (Emphasis added.)

¶ 53        In the amended petition, postconviction counsel asserted most, but not all, of defendant's *pro se* claims. The amended petition alleged that Schmidt had forced defendant to plead guilty by failing to prepare a trial strategy, that Schmidt had coached defendant on how to answer the questions the judge would ask in the guilty plea hearing, that Schmidt had falsely promised defendant that he would receive probation for pleading guilty, and that the sentence "violate[d] the proportionate penalty and due process clauses of the United States and Illinois Constitutions by being cruel and unusual."

¶ 54        Under the heading of "Other Post-Conviction Claims," however, postconviction counsel expressly declined to pursue two additional claims by defendant, deeming them to be "meritless." One of the *pro se* claims that postconviction counsel felt professionally barred from pursuing was the alleged "[i]neffective assistance of trial counsel for failure to file a [m]otion to [s]uppress." In the opinion of postconviction counsel, this claim lacked merit "because it [was] well settled that defense counsel's choice of what motions [would] be filed [was] considered a

tactical decision and within the discretion of defense counsel." The other claim that postconviction counsel declined to pursue was that Schmidt had rendered ineffective assistance by "provid[ing] misinformation about the [d]efendant['s] sentencing court date." Postconviction counsel gave no explanation for deeming that claim to be "meritless."

¶ 55　　　　It is defendant's position that postconviction counsel must either (1) "present[] *all* of a petitioner's desired claims to the [circuit] court" or (2) if postconviction counsel chooses to omit any of the *pro se* claims, give the court a valid rationale for each omission. (Emphasis added.) Omitting any *pro se* claim from the amended petition without providing the circuit court a sound reason for doing so is, in defendant's view, a violation of the requirement in Rule 651(c) that postconviction counsel "ma[k]e any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). According to defendant, this interpretation of Rule 651(c) flows from *Kuehner*, *People v. Perkins*, 229 Ill. 2d 34 (2007), *People v. Turner*, 187 Ill. 2d 406 (1999), and *Milam*, 2012 IL App (1st) 100832. But none of those cases hold that a postconviction counsel who chooses to pursue some of the defendant's *pro se* claims while abandoning, on ethical grounds, other *pro se* claims must earn each abandonment of a *pro se* claim by establishing, to the circuit court, the frivolity of the claim.

¶ 56　　　　True, under *Kuehner*, if postconviction counsel *moves to withdraw* on the ground that counsel finds no potential merit in any of the *pro se* claims despite the circuit court's determination to the contrary in the preceding first stage of the postconviction proceeding, counsel must explain why each of the *pro se* claims lacks potential merit. *Kuehner*, 2015 IL 117695, ¶ 21. But that is because the motion to withdraw is "an extraordinary request": it proposes to strip the

defendant of a statutory right, the right to counsel in the second stage of the postconviction proceeding. *Id.* ¶ 22.

¶ 57 By contrast, there is nothing extraordinary in weeding out the frivolous claims from the viable ones when reviewing the *pro se* petition with a view to drafting an amended petition. Postconviction counsel would do that as a matter of course. After all, the amended petition would have to be signed, and attorneys are prohibited from signing their names to unarguable claims (see Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018)). And because the writers of *pro se* petitions typically lack legal skills, it would hardly be surprising if some of the *pro se* claims were unarguable. By deciding, in the first stage of the postconviction proceeding, that the *pro se* petition as a whole was not "frivolous or *** patently without merit" (725 ILCS 5/122-2.1(a)(2) (West 2018)), the circuit court did not necessarily decide that the petition was uncluttered by any frivolous or meritless claims. Because summary dismissal is all or nothing, the first stage overlooks the clutter. In the first stage, there is no such thing as a piecemeal summary dismissal: the petition is either summarily dismissed in its totality or not at all (*People v. White*, 2014 IL App (1st) 130007, ¶ 33)— meaning that, if the *pro se* petition asserts, say, 10 frivolous claims and 1 arguable claim, it survives the first stage. Consequently, the *pro se* petition could well arrive at the second stage cluttered with spurious claims. The routine task of uncluttering falls to the appointed postconviction counsel, who will "shape[ ] the petitioner's claims into proper legal form and present[ ] those claims to the court." *Perkins*, 229 Ill. 2d at 44. If a *pro se* claim is frivolous, it cannot be shaped into proper legal form and, hence, must be excluded from the amended petition. See *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006); *People v. Greer*, 212 Ill. 2d 192, 205 (2004). The amended petition itself is not in proper legal form if it is disfigured by claims that a reasonable person knowledgeable in the law would be incapable of arguing with a straight face. Shaping the

*pro se* petition into proper legal form means not only rephrasing arguable claims and filling in missing elements that can be pleaded in good faith (see *Turner*, 187 Ill. 2d at 413) but also weeding out the spurious claims (see *People v. Butler*, 186 Ill. App. 3d 510, 517 (1989)). This is something that postconviction counsel *ordinarily* would do in creating or deciding on a product for second-stage scrutiny. This commonplace task requires no claim-by-claim justification to the circuit court as would be necessary if counsel were making the "extraordinary request" to withdraw from representing the defendant. *Kuehner*, 2015 IL 117695, ¶ 22.

¶ 58        This is not to suggest that, insomuch as postconviction counsel chooses to leave matter out of the amended petition or to file no amended petition at all, such choices will be, on appeal, immune to scrutiny. If it is ascertainable from the record, for example, that postconviction counsel could have made an amendment that would have overcome a procedural bar, the omission of that amendment was unreasonable, and the Rule 651(c) certificate is, therefore, rebutted. See *Perkins*, 229 Ill. 2d at 44; *Turner*, 187 Ill. 2d at 412-14; *Milam*, 2012 IL App (1st) 100832, ¶ 36. On appeal, though, the defendant has the burden of rebutting the presumption of reasonable assistance raised by the Rule 651(c) certificate. See *Perkins*, 229 Ill. 2d at 52 ("giv[ing] effect to counsel's official representation that he complied with Rule 651(c)" since "nothing in the record contradicts counsel's certificate"); *Wallace*, 2016 IL App (1st) 142758, ¶ 26 (holding that a "facially valid" certificate pursuant to Rule 651(c) raises a presumption that postconviction counsel "acted reasonably" and that, on appeal, the burden is on the defendant to overcome this presumption by "demonstrat[ing] his attorney's failure to substantially comply with the duties mandated by Rule 651(c)" (internal quotation marks omitted)). Unless the postconviction counsel moved to withdraw (see *Kuehner*, 2015 IL 117695, ¶ 21), defendant must affirmatively establish that the omission of a *pro se* claim was unreasonable (see *Wallace*, 2016 IL App (1st) 142758,

¶ 26). To presume unreasonableness from the unexplained omission of a *pro se* claim would be to lay this burden on the wrong shoulders.

¶ 59        Defendant balks at carrying this burden. He contends that, unless postconviction counsel moves to withdraw, the defensibility of a *pro se* claim does not matter. "Counsel is responsible for presenting all of a petitioner's desired claims to the court," defendant roundly declares. And for support, he quotes from *People v. Suarez*, 224 Ill. 2d 37, 51 (2007):

> "Our Rule 651(c) analysis has been driven, not by whether a particular defendant's claim is potentially meritorious, but by the conviction that where postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the [Post-Conviction Hearing] Act [(725 ILCS 5/122-1 *et seq.* (West 2000))] cannot be fully realized."

But defendant has ripped that quotation out of its context. The "analysis" to which the supreme court refers in the passage quoted from *Suarez* is whether a "postconviction counsel's failure to comply with Rule 651(c)" could be considered "harmless error." *Id.* at 44. The postconviction counsel in *Suarez* failed to file a certificate under Rule 651(c) (*id.* at 40), and the record failed to show compliance with that rule (*id.* at 44). The question, then, was whether the appellate court, in its review of the record, could excuse the noncompliance with Rule 651(c) as harmless error on the ground that the "defendant's postconviction claims were without merit as a matter of law" (*id.* at 41). The answer was no. The supreme court had "consistently declined the State's invitation to excuse noncompliance with the rule on the basis of harmless error." *Id.* at 51. "[A]ll indigents" were to be "provided proper representation when presenting claims" in the second stage of a postconviction proceeding (*id.*), "regardless of whether the claims made in the *pro se* or amended petition [were] viable" (*id.* at 52). Thus, the supreme court "h[e]ld that the

appellate court [had] erred in applying a harmless error analysis where no compliance with Rule 651(c) was shown." *Id. Suarez* is inapposite because Farrington's Rule 651(c) certifications raise a presumption of compliance with the rule and defendant has the burden of rebutting that presumption. See *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 30; *Wallace*, 2016 IL App (1st) 142758, ¶ 26; see also *People v. Nix*, 32 Ill. 2d 465, 470 (1965) (explaining that "[a] judicial opinion is a response to the issues before the court" and that a judicial opinion "must be read in the light of the issues that were before the court for determination").

¶ 60　　　　Specifically, defendant has the burden of establishing, by reasoned argument and by reference to evidence in the record, where necessary, that postconviction counsel made an unreasonable decision by deciding to omit, from the amended petition, two of defendant's *pro se* claims. See *Perkins*, 229 Ill. 2d at 52; *Wallace*, 2016 IL App (1st) 142758, ¶ 26. Let us take those two omitted claims one at a time.

¶ 61　　　　a. The Omitted *Pro Se* Claim That Trial Counsel Rendered Ineffective Assistance by Not Filing a Motion to Suppress Defendant's Statements to the Police

¶ 62　　　　In the amended postconviction petition, Farrington gave an explanation for declining to pursue the *pro se* claim that Schmidt had rendered ineffective assistance by failing to move for the suppression of defendant's statements to the police. "[I]t is well settled," Farrington wrote, "that defense counsel's choice of what motions will be filed is considered a tactical decision and within the discretion of defense counsel." And yet, defendant observes, under such authorities as *People v. Utley*, 2019 IL App (1st) 152112, ¶ 49, "the failure to file pre-trial motions constitutes ineffective assistance when the decision is objectively unreasonable under prevailing professional norms, reflecting no reasonable trial strategy."

¶ 63　　　　Fair enough, but just because defendant has identified a possible weakness in Farrington's stated rationale for abandoning this *pro se* claim, it does not follow that defendant has

rebutted the presumption that her abandonment of this claim was objectively reasonable. See *Wallace*, 2016 IL App (1st) 142758, ¶ 26. We decide *de novo* whether Farrington provided reasonable assistance in compliance with Rule 651(c). See *People v. Jones*, 2011 IL App (1st) 092529, ¶ 19.

¶ 64        Approaching this question afresh (see *id.*), without regard to Farrington's rationale (see *BNSF Ry. Co. v. Grohne*, 2019 IL App (3d) 180063, ¶ 78), we see a good reason to abandon the *pro se* claim that defendants' attorneys rendered ineffective assistance by omitting to file a motion for suppression. Such a claim would pertain to the period before defendant's guilty plea, and a knowing and voluntary guilty plea waives all nonjurisdictional errors that were committed before the guilty plea, including constitutional errors. *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). Ineffective assistance by defense counsel, a constitutional error (see *People v. Domagala*, 2013 IL 113688, ¶ 36), has nothing to do with the jurisdiction of the circuit court. Therefore, a guilty plea waives all claims that defense counsel rendered ineffective assistance before the guilty plea (see *Townsell*, 209 Ill. 2d at 545; *People v. Ivy*, 313 Ill. App. 3d 1011, 1017 (2000))—unless the ineffective assistance somehow made the guilty plea unknowing or involuntary (*People v. Miller*, 346 Ill. App. 3d 972, 980-81 (2004); *People v. Brumas*, 142 Ill. App. 3d 178, 180 (1986)).

¶ 65        As we have held, the Illinois Supreme Court Rule 402(a) (eff. Nov. 1, 2003) admonitions in this case and defendant's responses to them compel the conclusion that his guilty plea was both knowing and voluntary. The validity of the guilty plea is affirmatively shown by the record. Therefore, to rebut the presumption of reasonable assistance raised by Farrington's Rule 651(c) certifications, defendant must explain why the rule of waiver did not apply to his *pro se* claim that Schmidt denied him the effective assistance of counsel by omitting a motion for suppression. Defendant fails to carry that burden.

¶ 66        b. The Omitted *Pro Se* Claim That Schmidt Rendered Ineffective Assistance
                 by Telling Defendant the Wrong Date for the Sentencing Hearing

¶ 67        In his *pro se* petition, defendant alleged that Schmidt told him the wrong date for the sentencing hearing, misinforming him that the sentencing hearing was set for April 18, 2013, instead of April 17, 2013, and that, consequently, defendant missed the sentencing hearing (although Schmidt attended it). In support of this claim, defendant submitted the affidavit of Trina Smith, who stated that she was with defendant in the courtroom on April 8, 2013, when the case was continued until April 17, 2013. According to Smith, however, Schmidt told defendant to leave the courtroom before the new date was announced, and, later in Schmidt's office, Smith heard Schmidt tell defendant that the sentencing hearing would take place on April 18, 2013.

¶ 68        But the remedy would be a new sentencing hearing, which would be impossible since defendant has fully served his prison sentence and is now in the final months of his mandatory supervised release. It is impossible to turn back time and reduce a prison sentence that defendant has fully served. To be sure, mandatory supervised release is a part of the sentence (*Taylor v. Cowan,* 339 Ill. App. 3d 406, 410 (2003)), but it is separate and distinct from the prison term that the circuit court imposed (*Faheem-El v. Klincar,* 123 Ill. 2d 291, 298 (1988)). The claim that Schmidt told defendant the wrong date for the sentencing hearing is moot because, with the prison sentence discharged, courts can provide no effectual relief. See *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 11. Courts can reduce a prison sentence, but they lack authority to strike a period of mandatory supervised release (*People v. Russell*, 345 Ill. App. 3d 16, 22 (2003)).

¶ 69                              III. CONCLUSION

¶ 70        For the foregoing reasons, we affirm the circuit court's judgment.

¶ 71        Affirmed.