NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240323-U

NO. 4-24-0323

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 13, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| ROBERT J. LAWSON, | ) | No. 11CF800 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Steigmann and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Appointed trial counsel should not have been permitted to withdraw prior to the disposition of defendant's postconviction petition, but the error was harmless because the State conceded the sole meritorious claim and defendant obtained the only relief available on that claim. Additionally, even assuming that defendant did not receive a copy of his attorney's motion to withdraw, any error is harmless when there was no additional meritorious relief his attorney could pursue.

¶ 2    Defendant Robert J. Lawson was convicted of two counts of attempted murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2010)) and one count of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1) (West 2010)). He was sentenced to 20 years in prison, plus a 25-year firearm enhancement, on each attempted murder charge and 7 years on the AUUW conviction.

¶ 3    In 2020, defendant was granted leave to file a successive postconviction petition, in which he argued that his AUUW conviction should be vacated as unconstitutional and that the

court should reconsider his sentencing in light of *Miller v. Alabama*, 567 U.S. 460 (2012), and the emerging adult theory. Following the State's concession that the AUUW conviction was unconstitutional and should be vacated, the circuit court granted defendant's counsel's motion to withdraw. The court then held a hearing on the State's motion to dismiss, vacated defendant's AUUW conviction, and found that the remaining issue lacked merit.

¶ 4        Defendant appeals, arguing that (1) he was denied reasonable assistance of counsel because his attorney was allowed to withdraw when it was undisputed that his successive postconviction petition contained a viable issue regarding his AUUW conviction and (2) he was denied procedural due process because his attorney was allowed to withdraw without ensuring that defendant received a copy of the attorney's motion to withdraw or had an opportunity to respond to it. The State concedes that defendant's counsel should not have been allowed to withdraw but argues that any error was harmless.

¶ 5        For the reasons stated below, we affirm.

¶ 6                                I. BACKGROUND

¶ 7        In 2011, defendant was charged by indictment with four counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2010)), two counts of aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2010), one count of AUUW (720 ILCS 5/24-1.6(a)(1) (West 2010)), and two counts of mob action (720 ILCS 5/25-1(a)(1) (West 2010)). The underlying facts of the case were summarized as follows in defendant's direct appeal:

          "At trial, the evidence indicated that on August 15, 2011, at approximately 1 p.m., defendant rode his bicycle to a convenience store with a passenger on the back. Defendant got off his bicycle and approached a vehicle parked at the curb in front of the store. Defendant pulled out a handgun, opened the door to the vehicle,

- 2 -

and fired the handgun into the vehicle at the two front-seat occupants. Defendant continued to shoot at the vehicle as it drove away from the scene. Both occupants were shot, but neither were fatally injured. One of the occupants received gunshot wounds to his leg and arm. The second occupant received a gunshot wound to his leg, which struck an artery and required the placement of a metal rod inside his leg. The jury found defendant guilty on all counts, except for the two counts of mob action." *People v. Lawson*, 2013 IL App (3d) 120148-U, ¶ 5.

¶ 8    At the sentencing hearing in 2012, the trial court considered defendant's presentence investigation report (PSI), which prompted the court to have the following colloquy with defendant:

"THE COURT: Let me ask you this: I read the PSI, as I always do, and they are very good with our Probation Department in preparing them. How come everybody is shooting at you?

THE DEFENDANT: I can't speak for nobody else. I just—

THE COURT: I mean, you've been shot once, right?

THE DEFENDANT: Twice.

THE COURT: Twice. And there have been other times when you've been shot at and not hit, right?

THE DEFENDANT: Right.

THE COURT: How come everybody's shooting at you?

THE DEFENDANT: I guess they just don't—some people just don't like me, and I'm in the same neighborhood. It ain't like I can get away from 'em. I'm stuck around the same people that don't like me. I don't got no—I can't just up and

relocate when things happen, so I'm stuck around it."

¶ 9      Defendant was sentenced to 20 years' imprisonment, plus a 25-year firearm enhancement for each attempted murder conviction, and 7 years' imprisonment for the AUUW conviction.

¶ 10     Defendant moved to reconsider his sentence, and at the hearing on the motion, the court commented as follows:

> "I've given a lot of thought to this sentence after the fact, and I can't help but think that somehow it's tied into the fact that [defendant]—I'm talking about this incident. Somehow Mr.—or I think it's—I can't help but think that it's tied into the fact that [defendant] had been shot at quite a few times over his life. And I asked him about that, because I'm concerned that I'm only seeing this part of a bigger picture. But [defendant] chose not to really answer that question when I asked him, 'Why is everybody shooting at you?' And he said, 'They don't like me.' "

¶ 11     The court denied the motion to reconsider.

¶ 12                    A. Direct Appeal

¶ 13     In defendant's direct appeal of his conviction, he argued that the trial court considered an improper aggravating factor and further failed to consider mitigating factors in imposing his sentence; the trial court's judgment was affirmed. *Id*. Defendant then filed a petition for leave to appeal with the Illinois Supreme Court, which was denied. *People v. Lawson*, No. 118263 (2014).

¶ 14                    B. First Postconviction Petition

¶ 15     In 2015, defendant filed his first postconviction petition, arguing a number of errors and asserting ineffective assistance of both trial and appellate counsel for not raising those issues

on direct appeal. The postconviction petition was denied after the third stage, and on appeal, defendant's counsel filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), which was allowed. *People v. Lawson*, No. 3-18-0460, 8 (2020) (unpublished order under Illinois Supreme Court Rule 23(e)(1)).

¶ 16                    C. Successive Postconviction Petition

¶ 17        In May 2020, defendant filed a motion for leave to file a successive postconviction petition, arguing that his AUUW conviction should be vacated as unconstitutional and that his sentence should be reassessed because of the emerging adult theory.

¶ 18        On the first issue, defendant's petition asserted that his 2009 AUUW conviction in Peoria County case No. 09-CF-1007 was void and asked that it be vacated. However, nowhere does defendant's briefing in this court put that specific conviction at issue. Furthermore, we take judicial notice of the circuit court's records in case No. 09-CF-1007. See *In re N.G.,* 2018 IL 121939, ¶ 32 (stating that reviewing court had authority to take judicial notice of records in a different case). The records from that case reveal that there is a pending petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)) seeking to set aside the AUUW conviction in the 2009 case. Consequently, we will not discuss that particular conviction any further. However, defendant further argued that his 2011 AUUW conviction in this case, No. 11-CF-800, should also be vacated for the same reasons. It is this AUUW conviction that will be the subject of further analysis here.

¶ 19        On the second issue, defendant argued for application of the emerging adult theory, stating that he was a 24 year old suffering from attention-deficit/hyperactivity disorder and post-traumatic stress disorder and was not a fully mature adult.

¶ 20        The circuit court granted defendant leave to file his successive postconviction

petition, appointed counsel for him, and ordered the State to file a written response to the petition. In the order docketing the petition for a stage-two proceeding, the court summarized the two issues raised as follows:

> (1) Can defendant's conviction for count 7 for aggravated unlawful use of a weapon stand, "as it is the class 2 sentencing version of said statute, which was held facially unconstitutional in *People v. Burns, 2015 IL 117387*, ¶ 32, and *People v. Aguilar, 2013 IL 112116*, ¶ 22?"

> (2) Is defendant, who was 24 years, 2 months and 18 days old at the time of the offense herein, entitled to the protection of the "emerging adult" theory reflected in literature, but not yet adopted as a *per se* basis for relief in Illinois case law?

¶ 21                                    D. State's Response

¶ 22       On November 23, 2020, the State filed a responsive pleading, which conceded that the AUUW conviction under count 7 should be set aside but contended that defendant's emerging adult argument lacked merit and should be dismissed.

¶ 23                        E. Defense Counsel's Motion to Withdraw

¶ 24       The matter remained pending for a number of months until the June 4, 2021, hearing, when defense counsel stated that he had filed a motion to withdraw as counsel. Defendant appeared remotely at the hearing. After acknowledging that the State had filed a motion to dismiss and that he had not yet responded because he had been uncertain as to "what [he] was going to do," counsel advised the court of the following:

> "[A]fter speaking with [defendant], I did today file a motion for leave to withdraw as attorney of record. So, because the motion to dismiss is pending and because I've now filed my motion for leave to withdraw, I [am] asking to set both matters

for hearing on August 20th, or the State and I are asking to set the matters for hearing on August 20th at 9:00 a.m.

I think procedurally mine should go first and then address the State's motion to dismiss. I will mail a copy of my motion to [defendant], and as far as I'm concerned, he can have as much time as he wants to respond. Perhaps anything up to a week before the hearing would be fine.

I trust after speaking with him and working with him that he'll be quicker than that, but I'm fine with whatever timeline he wants."

¶ 25 It does not appear that defendant had been given a copy of the motion to withdraw at the time of the June 4 hearing. The proof of service for the motion states that it was served by mail, although the proof states that service was made to "Michael Riley" and not defendant (though defendant's name and address are listed). The court then asked defendant if he could file a response on or before July 30, 2021, if he intended to file one. Defendant agreed when the court clarified that it was referring to the State's motion to dismiss, and the court set the matter for a hearing on August 20. Defendant then requested additional time to August 13 to respond, which was allowed. The following exchange then occurred:

THE COURT: All right. So, we will see you August 20th. Get your response on file by August 13th.

Is there anything else we need to address today?

[DEFENSE COUNSEL]: Judge, just to clarify, he's responding to my motion and the State's motion to dismiss by August 13th?

THE COURT: Yes.

[DEFENSE COUNSEL]: Okay.

THE DEFENDANT: I didn't know he had filed a motion. I didn't get nothing from my attorney.

THE COURT: Well, you will receive it in relatively short order.

[DEFENSE COUNSEL]: Yeah. Next week.

THE COURT: And you'll also get a copy of this order. Okay?

THE DEFENDANT: Okay."

¶ 26 A hearing on defense counsel's motion to withdraw was held on August 20, 2021. Counsel's motion to withdraw stated that the AUUW claim had already been conceded and would not be addressed. The court began the hearing by asking if anyone wanted to add to what had already been filed, at which time defense counsel asked to make a brief argument. Counsel began by referencing the certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), which he filed the day of the hearing, stating that he had reviewed the relevant documentation in the case and had discussed the matter with defendant and that the remaining emerging adult claim was frivolous and lacked merit. Counsel went on to outline why he believed the argument concerning the emerging adult theory lacked merit. Defendant was present remotely, but at no time did he speak. Counsel's Rule 651(c) certificate reiterated that he had consulted with defendant "by phone to ascertain his contentions of deprivation of constitutional rights," that he had examined the record of the trial proceedings and "all other records," and had "made any amendments to the petitions filed *pro se* that [were] necessary for an adequate presentation of [defendant's] contentions."

¶ 27 Following counsel's argument, the trial court allowed him to withdraw and then set the matter for a hearing on the State's motion to dismiss. The court then indicated it would get defendant a copy of the withdrawal order. Defendant responded that he "never got a copy of the

last court order" but did not say that he had not received a copy of counsel's motion to withdraw. The court said it would see that defendant received a copy of the orders.

¶ 28 At the next hearing date, in October 2021, defendant informed the court that he had never received a copy of the motion to withdraw or certain other court orders. The court informed defendant that he would be sent copies of the prior orders and the State's motion to dismiss and set a new hearing date. At the December 2021 hearing, defendant reiterated that he had not yet received copies of the State's motion to dismiss; however, the court pointed out that defendant had already filed a *pro se* response to the State's motion on July 29, 2021, roughly three weeks before the hearing on his counsel's motion to withdraw. The court then said:

> "It looks like if you—you were given until December 1st to file anything further that you wish to file. And you have not. The only thing it would appear to the Court that you have not received is the order that allowed [defense counsel] to withdraw. If you aren't prepared to proceed today on the motion, we can set this for hearing in 60 days."

¶ 29 The court then gave defendant an additional 60 days to file any further responses and stated that it would "forward [defense counsel's] motion along with the order allowing him to withdraw." He then acknowledged that he already had a copy of the motion to dismiss.

¶ 30 At the subsequent February 2023 hearing, defendant asked for additional time to respond, which was allowed. The court stated, "[F]or the record, a copy of the June 4th order, the motion and order and then the December 10th order were all sent to [defendant]." The case was continued several more times.

¶ 31 F. Ruling on Postconviction Petition

¶ 32 A hearing was held on December 8, 2023, at which defendant argued he was

entitled to a third-stage hearing and that his age at the time of the offense did not foreclose relief under the emerging adult theory. In response, the State reiterated it had conceded defendant's postconviction claims regarding the AUUW claim. The State then stated that in terms of *Miller* and *People v. Buffer*, 2019 IL 122327, defendant "would not have been eligible for a review under those cases as he was 18 at the time, and the courts have drawn a bright line or a pretty definitive line as to the age limit for that consideration." Defendant was given an opportunity to respond and limited his remarks to commenting on the emerging adult issue.

¶ 33    In an order dated January 11, 2024, the trial court vacated the AUUW conviction, noting that the State "has conceded that the Defendant's conviction for Aggravated Unlawful Use of a Weapon (Count 7) is now void" pursuant to the Illinois Supreme Court's decisions in *Aguilar* and *Burns*. The court further dismissed the remaining postconviction claims relating to the emerging adult theory, stating that the mitigating factors that pertain to youth, as established in *Miller* and extended by *Buffer*, to *de facto* life sentences were codified in section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2012)) and do not apply to a defendant over the age of 18 when the offense was committed. The court stated that defendant, "at age 24 was well above 18," and that as a matter of law he "is not entitled to the application of *Miller* and *Buffer* mitigation factors."

¶ 34    This appeal followed.

¶ 35                II. ANALYSIS

¶ 36    On appeal, defendant raises two issues in connection with the trial court's order allowing his attorney to withdraw. First, he argues that the validity of his sentence for the AUUW charge on count 7 was a meritorious issue raised in his petition, so counsel's withdrawal was improper. Second, he argues that he was denied procedural due process when the court addressed

his attorney's motion to withdraw without ensuring that he received a copy of the motion and had been given an opportunity to respond to it.

¶ 37                                    A. Withdrawal of Counsel

¶ 38        Defendant first argues that the trial court erred by allowing his appointed counsel to withdraw when there was still a meritorious issue pending in his successive postconviction petition. A trial court's allowance of a motion to withdraw is reviewed for an abuse of discretion. *People v. Richey*, 2017 IL App (3d) 150321, ¶ 20. According to defendant, because the State and defense counsel admitted that a meritorious claim existed as to his assertion the AUUW conviction was unconstitutional, counsel was prohibited from withdrawing under *People v. Kuehner*, 2015 IL 117695, ¶ 21. On appeal, the State concedes it was error to allow appointed defense counsel to withdraw, but it contends that any resulting error was harmless. See, *e.g.*, *People v. Pingelton*, 2022 IL 127680, ¶ 46.

¶ 39        Defendant now argues that he was prejudiced by counsel's failures because it is unclear what role his AUUW conviction played in his overall sentence and that counsel could have sought resentencing of the attempted murder convictions. According to defendant, a new sentencing hearing is required where the trial court either issues one sentence for all convictions or where it appears from the record that the vacated sentence influenced the sentence for the convictions that are affirmed. See, *e.g.*, *People v. Lopez*, 147 Ill. App. 3d 127, 128 (1986); *Kuehner*, 2015 IL 117695, ¶ 21.

¶ 40        We begin by noting the unusual posture of this case on appeal and agreeing with the State and defendant that the trial court should not have allowed defense counsel to withdraw until the court had ruled on the successive postconviction petition. Although the State had conceded defendant's point regarding the AUUW conviction, the conviction had not yet been

vacated. Technically speaking, defendant's argument concerning the validity of his conviction was not resolved when counsel withdrew, even if it was practically conceded.

¶ 41 However, the error here is exceedingly technical and more a matter of the sequence of events than their substance. In light of the State's concession concerning the invalidity of defendant's AUUW conviction, defendant's counsel and the court treated that matter as a *fait accompli*. It is instructive to consider defendant's statement about how he thinks the matter would have proceeded if counsel's motion to withdraw had been denied: "Counsel could continue to represent [defendant] and present the AUUW argument, while not advocating for any issue that counsel thought lacked merit." However, the best possible outcome of proceeding in this manner would have been vacation of defendant's AUUW conviction and that is precisely the result he got.

¶ 42 As noted by the State, harmless error review applies in the postconviction context. *Pingelton*, 2022 IL 27680, ¶ 46. Under these circumstances, we have no hesitation in concluding that appointed counsel's withdrawal, though technically improper prior to the resolution of the AUUW issue, worked no prejudice to defendant. Defendant achieved the best-case outcome even though his attorney's withdrawal technically occurred too early, as the conviction was vacated— just as everyone seemed to assume it would be.

¶ 43 Defendant argues, however, that he might have achieved more relief on the AUUW issue than just vacation of that conviction, suggesting that the sentencing on the other charges may have been in some way affected by the AUUW charge. Thus, defendant argues, he is entitled not just to vacation of the AUUW conviction, which he achieved, but to resentencing on the other charges, which he did not. We disagree.

¶ 44 The trial court imposed separate sentences for each of the three convictions: defendant received 20 years' imprisonment, plus an additional 25 years' firearm use enhancement,

for each attempted murder conviction and 7 years for his AUUW conviction. In *People v. Payne*, 98 Ill. 2d 45, 57 (1983), the Illinois Supreme Court held that a remand for resentencing is not necessary where separate sentences are imposed for each of multiple convictions. Thus, defendant can succeed on appeal only if he shows some indication in the record that the sentencing court considered the AUUW conviction vacated in determining the length of the sentence for the remaining offenses. *Id.*

¶ 45        In an attempt to invoke the limited exception discussed in *Payne*, defendant suggests that the court imposing his original sentence did, in fact, consider the AUUW conviction in determining his sentence on the remaining offenses. Specifically, defendant points to the sentencing judge asking him how many times he had been shot and why people were shooting at him. However, it is difficult to see how these questions are related to the AUUW conviction in particular. That charge alleged that defendant, a convicted felon, carried a loaded, uncased firearm on his person; it did not relate to defendant *shooting* the firearm or being *shot at*. Additionally, defendant fails to identify any comments from the trial court indicating that it inappropriately considered the AUUW conviction in imposing sentence on the two attempted murder convictions.

¶ 46        Accordingly, we do not find that there was a meritorious argument for defendant's counsel to make that defendant's vacated AUUW conviction in some way affected the sentence imposed on him for the other offenses. In other words, the only relief defendant could have achieved on the AUUW conviction was its vacation, and he obtained that relief. Defendant takes no issue with the balance of appointed counsel's conclusion that there are no other meritorious issue presented by the petition. Consequently, the trial court's decision to allow counsel to withdraw prior to resolution of the pending motion to dismiss, although error for the reasons stated above, was harmless.

¶ 47                                    B. Due Process

¶ 48        Defendant also requests remand based upon a claimed due process violation concerning counsel's failure to present him with a copy of the motion to withdraw before the motion was heard or granted. Defendant further contends he was not given an opportunity to be heard at the withdrawal hearing. The State concedes that defendant was not provided with a copy of the motion to withdraw and that he was not given an opportunity to respond, but it again argues that any error is harmless. Defendant claims he was prejudiced, arguing that had he been permitted to respond and his counsel not been allowed to withdraw, counsel *could possibly* have inquired about the sentencing issue and asked for a remand. Whether a defendant is denied procedural due process is reviewed *de novo*. *People v. Olsson*, 2014 IL App (2d) 131217, ¶ 11.

¶ 49        "Generally, procedural due process refers to notice and the opportunity to be heard." *Erickson v. Knox County Wind Farm LLC*, 2024 IL App (4th) 230726, ¶ 88. In this case, defendant asserts that he did not receive a copy of his attorney's motion to withdraw, and although the State has conceded the point, we note that the record does not establish it. There appear to have been multiple times defendant claimed not to have received documents and, again, the record does not sort out whether any of these assertions are correct. What we do know is that defendant had oral notice of his counsel's intention to seek to withdraw, and there is nothing in the record to contradict his attorney's representation that he had discussed his intentions with defendant. In the most basic sense, defendant had notice of his attorney's motion, though he was not privy to the written motion itself and its statement of the reasons advanced for withdrawal.

¶ 50        When the motion to withdraw was before the trial court for hearing on August 20, 2021, however, counsel elaborated on the reasons that he wished to withdraw. Defendant attended that court appearance remotely but did not speak, although the record suggests no impediment to

him doing so. He did not advise the court that he had not received a copy of the motion to withdraw. He heard counsel's oral statements of the reason he was choosing to withdraw and made no response.

¶ 51 There can be little doubt that defendant *should have* been given a copy of the motion prior to the hearing. *People v. McMillen*, 2021 IL App (1st) 190442, ¶¶ 19-20. Even if we assume the correctness of defendant's assertion that he did not receive an advance copy of his attorney's motion, it is unclear to us whether his right to due process was violated under the facts present here. He knew of the motion, and at the hearing, he heard counsel's oral statement of his reasons for the motion. He had the opportunity to be heard on the motion, but he did not speak up. Moreover, it is difficult to say that the *trial court* deprived defendant of due process when he never spoke up on August 2, 2021, to let the court know that he still had not gotten a copy of the motion, which the trial court might reasonably have expected would have occurred by that time. The issue here is, of course, whether the *trial court* violated defendant's right to due process, and it can hardly be said that the trial court failed to protect defendant's due process rights if it was not made aware that, by the time of the hearing, defendant still had not received a copy of the motion.

¶ 52 Even if we assume, without deciding, that defendant's due process rights were violated, we find that any such violation was harmless. As noted by the State, *People v. Stoecker*, 2020 IL 124807, ¶ 23, establishes that a procedural violation in postconviction proceeding is subject to harmless error analysis. In *Stoecker*, although both the petitioner and his counsel were served with the State's motion to dismiss, the trial court granted the motion four days after it was filed, without giving the petitioner an opportunity to respond. *Stoecker*, 2020 IL 124807, ¶¶ 9-10. The supreme court applied the harmless error doctrine, observing that the petition had been dismissed because the claims were "patently incurable as a matter of law" and "no additional

proceedings would have enabled him to prevail on his claim for relief." *Id.*, ¶¶ 24, 26; see *Pingelton*, 2022 IL 127680, ¶ 46.

¶ 53 We find *Stoecker* leads us to the same conclusion here. Having already found no merit to defendant's argument in our prior discussions in this order, any error in failing to provide defendant with a copy of the motion to withdraw or an opportunity to be heard was harmless. In the end, the outcome is the same: the argument defendant feels his counsel might have made on his behalf simply lacks merit. As in *Stoecker*, defendant's underlying contention is "patently incurable as a matter of law," and "no additional proceedings would have enabled him to prevail on his claim for relief." *Stoecker*, 2022 IL 127680, ¶¶ 24, 26. Accordingly, even if defendant's due process rights were violated, any such error is harmless.

¶ 54 III. CONCLUSION

¶ 55 For the reasons stated, we affirm the trial court's judgment.

¶ 56 Affirmed.